IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| SUSAN E. BREDTHAUER, *et al.*, | |
| Plaintiffs, | |
| v. | 4:10CV3132 |
| GILBERT G. LUNDSTROM, *et al.*, | |
| Defendants, | |
| and | |
| RONALD A. LAIRD, *et al.*, | |
| Plaintiffs, | |
| v. | 4:10CV3139 |
| GILBERT G. LUNDSTROM, *et al.*, | |
| Defendants, | |
| and | |
| SUSAN BARKER, | |
| Plaintiff, | |
| v. | 08:10CV326 |
| SAMUEL P. BAIRD, | |
| Defendant. | |

**DEFENDANT JOYCE POCRAS' MEMORANDUM
OF LAW IN SUPPORT OF MOTION TO DISMISS**

**INTRODUCTION**

Plaintiffs' Complaint alleges that Ms. Pocras is liable for multiple millions of dollars in alleged retirement plan losses because she served as an outside member of the TierOne Bank Board of Directors. (Compl. ¶ 72-75.) As a Board member, Ms. Pocras is cast by Plaintiffs as a culpable ERISA investment fiduciary to the TierOne Bank Savings Plan (the "Savings Plan") and the TierOne Corporation Employee Stock Ownership Plan (the "ESOP") (collectively the "Plans"). (*Id.* at ¶ 74.) Neither the allegations contained in the Complaint, nor the text of the Plans, nor the law supports the legal theory woven by Plaintiffs.

The Complaint does not allege Ms. Pocras is a "named fiduciary" to the Plans because the terms of the governing Plan documents do not name Ms. Pocras or the outside members of the Board as the Plans' fiduciaries. Instead, the Plans tell a different story. The ESOP identifies the "Trustee" as its investment fiduciary. (Ex. A, ESOP at 43, § 8.2(a).) The prospectus for the ESOP identifies "Messrs. Lundstrom, Laphen, and Witkowicz and Ms. Luther" as the "Trustees." (Ex. B, 2002 Stock Conversion Prospectus at 107.)[1] The terms of the Savings Plan tell the same story. It identifies the "Employee Benefits Committee" as its investment fiduciary. (*See* Ex. C, Savings Plan Summary Plan Description at 11.) Ms. Pocras is not alleged to be an Employee Benefits Committee member.

---

[1] The Eighth Circuit has held that courts may consider information referenced in a complaint even if it is not attached to the complaint. *See Moses.com Sec., Inc. v. Comprehensive Software Sys. Inc.*, 406 F.3d 1052, 1063 n. 3 (8th Cir. 2005) ("We may examine the press release in our consideration of the 12(b)(6) motion to dismiss, even though it was not expressly part of the pleadings, because it was incorporated into the pleadings by reference-the complaint specifically mentioned it as a ground for [plaintiff's] claims against [defendants]."); *See also Parnes v. Gateway 2000, Inc.*, 122 F.3d 539, 546 n.9 (8th Cir. 1997) (finding that the district court properly considered a prospectus which accompanied defendant's public stock offer where plaintiff alleged a claim based on the prospectus but did not attach the document to their complaint).

-1-

Lacking any Plan-based connection to Ms. Pocras' fiduciary status, Plaintiffs make a generic allegation that she is a "functional" fiduciary. (Compl. ¶ 119.) But the Complaint is devoid of facts showing that Ms. Pocras "functioned" as a fiduciary. No facts are put forward showing Ms. Pocras actually exercised any authority or control over the Plans' assets. In *Bell Atlantic v. Twombly,* 550 U.S. 544, 560-63 (2007), the Supreme Court expressly "retired" *Conley v. Gibson's*, 355 U.S. 41, 45-46 (1957), "no set of facts" language. The new standard requires the Court to engage in a "context-specific" review of the complaint. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009). Pleading labels or conclusions, as Plaintiffs have here with respect to Ms. Pocras, are no longer sufficient. *Twombly*, 550 U.S. at 555. Plaintiffs instead must plead enough facts to "nudge[] their claims across the line from conceivable to plausible." *Id.* at 570. Here, the Complaint comes nowhere close to the line of plausibility. The Complaint must be dismissed because it does not allege one fact that establishes Ms. Pocras as an investment fiduciary.[2]

## FACTUAL BACKGROUND

According to the Complaint, Ms. Pocras' ERISA fiduciary status is derived from her status as an "outside" director ("Outside Director") of the Company. (*See, e.g.*, Compl. ¶¶ 72-75.) She was Chair of the Board of Directors' Compensation Committee and served as a member of the Audit Committee. (*Id.* at ¶ 72).

Plaintiffs assert that as a Board member Ms. Pocras became an all-purpose investment fiduciary because the Board "appointed" the ESOP Trustee and the Savings Plan's Employee Benefits Committee. (Compl. ¶¶ 122, 127, 136, 157.) This all-purpose fiduciary status for all

---

[2] In addition to the arguments offered herein, Ms. Pocras also expressly joins, adopts, and incorporates by reference the arguments set forth in (i) Defendants' Omnibus Motion to Dismiss All Claims and (ii) Defendants Samuel Baird, James McClurg, James Strand, Charles Hoskins, and Campbell McConnell Motion to Dismiss.

Board members has no statutory or decisional support. Plaintiffs emboss this alleged breach of the duty to "appoint and monitor" with a claim Ms. Pocras "failed to disclose" material nonpublic information to the Plans' participants. The "failure to disclose" claim thus seeks to hold Ms. Pocras liable as an ERISA fiduciary for non-fiduciary acts that would potentially run afoul of federal securities laws. For example, Plaintiffs allege that signing and filing what Plaintiffs claim was an S-8 with the SEC somehow made Ms. Pocras an ERISA fiduciary. (*Id.* ¶ 75.) It most certainly did not. The two last claims against Ms. Pocras—"the failure to avoid conflicts of interest" and "co-fiduciary"—are derivative claims. Because Ms. Pocras was not a Plan fiduciary, these claims also fail as a matter of law.

## ARGUMENT

### I.  APPLICABLE LEGAL STANDARD

To avoid dismissal under Rule 12(b)(6), "a complaint . . . must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Twombly*, 550 U.S. at 562 (internal quotation and citation omitted). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do . . . ." *Id*. at 555. Factual allegations in the complaint must be definite enough to "raise a right to relief above the speculative level" and a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Id*. at 555, 570; *see also Iqbal*, 129 S. Ct. at 1953 (expanding *Twombly* to "all civil actions"). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." 129 S. Ct. at 1949. Plaintiffs' Complaint fails that standard and must be dismissed in its entirety.

## II. MS. POCRAS CANNOT BE LIABLE FOR A BREACH OF THE FIDUCIARY DUTY OF PRUDENCE UNDER COUNT I

The Court should dismiss Count I in its entirety because Plaintiffs have not alleged Ms. Pocras, an Outside Director, acted as the Plans' investment fiduciary for purposes of ERISA's fiduciary duty of prudence. This fiduciary breach claim has no factual support in the Complaint and no support in the statutory language of ERISA or in the specific language of the Plans.

All of Plaintiffs' claims in Count I arise from the assertion that TierOne stock should not have been offered as an investment option because the financial and real estate crisis made investing in TierOne imprudent. (*See, e.g.*, Compl. ¶ 2.) As the Complaint makes clear, the Outside Director Defendants did not have any role (and hence did not have any duty) with respect to the Plans' investments. Specifically, the portions of the Complaint which set forth the Board's responsibilities confirm that the Outside Director Defendants were not tasked with selecting the Plans' investment options or communicating about Plan benefits. (*Id.* ¶¶ 51-57, 65-84, 93-97.)

Plaintiffs summarily conclude that Director Defendants "bore ultimate responsibility for appointing, monitoring and, if necessary, removing Company officers/employees, including members of the Employee Benefit Committee" implying that this responsibility translates to a fiduciary duty. (Compl. ¶ 127.) However, an allegation that "directors . . . who [hold] the authority to appoint and remove Plan fiduciaries . . . are therefore, themselves fiduciaries . . ." goes too far. *In re WorldCom, Inc.*, 263 F. Supp. 2d 745, 760 (S.D.N.Y. 2003); *Martin v. Feilen*, 965 F.2d 660, 669-70 (8th Cir. 1992) (holding that whether a director is a plan fiduciary "[depends] on the circumstances" and that a "director's power to appoint plan trustees makes him a fiduciary . . . only 'to the extent' he exercises the discretion or control described in

§ 1002(21)(A)."); *Crocker v. KV Pharm. Co.*, Case No. 09-198, 2010 U.S. Dist. LEXIS 28116, at *46 (E.D. Mo., Mar. 24, 2010) (holding that plaintiffs' "bare allegations" that "the Director Defendants 'were fiduciaries . . . in that they exercised discretionary authority or discretionary control respecting [the] management of the Plan, exercised authority or control respecting management or disposition of Plan assets and/or had discretionary authority or discretionary responsibility in Plan administration'" were insufficient to state a claim). To accept Plaintiffs' proposition "would make any supervisor of an ERISA fiduciary also an ERISA fiduciary." *WorldCom*, 263 F. Supp. 2d at 760. The fact that Outside Directors retained appointment and removal powers over the Committee that administered the ESOP and the Savings Plan does not make Ms. Pocras or the other Outside Directors into investment fiduciaries. Where a member of a board of directors is responsible for selection and retention of plan fiduciaries, "their responsibility, and, consequently, their liability, is limited to the selection and retention . . . *."* 29 C.F.R. § 2509.75-8 at D-4. The Complaint does not set forth *any* particular facts that even suggest there was a breach of this appointment responsibility.

Because neither Ms. Pocras, nor any of the other Outside Director Defendants, were investment fiduciaries—under any set of facts that Plaintiffs have pled or could plead—they should be dismissed with prejudice. *See, e.g.*, *Maniace v. Commerce Bank of Kansas City, N.A.*, 40 F.3d 264, 267 (8th Cir. 1994); *Plumb v. Fluid Pump Serv., Inc.*, 124 F.3d 849, 856 (7th Cir. 1997) (affirming dismissal of one who was not a fiduciary with respect to challenged conduct).

### A. Ms. Pocras Was Neither A "Named Fiduciary" Nor A "Functional Fiduciary"

#### 1. *Ms. Pocras Was Not Named Under Either Plan As A Plan Fiduciary*

Neither Plan names Ms. Pocras as an investment fiduciary. The ERISA statute was deliberately structured so that legal responsibility for management of ERISA plans would be

clearly located. *Herman v. NationsBank Trust Co.*, (*Georgia*), 126 F.3d 1354 (11th Cir. 1997) (*citing Lowen v. TowerAsset Mgmt., Inc.*, 829 F.2d 1209, 1218 (2d Cir. 1987)); *In re American Express Co. ERISA Litig.*, 08 Civ. 10834, 2010 WL 4371434, at *9 (S.D.N.Y. Nov. 2, 2010) (granting motion to dismiss and noting "[a]n action for breach of ERISA fiduciary duty required that the defendant 'was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to the complaint.'"). It is an ERISA Plan's "named fiduciaries" who are subject to the strict fiduciary standards found in 29 U.S.C. § 1104. Only named fiduciaries may be sued for breaching those standards. *Id*. If ERISA did not limit the definition of fiduciaries to those with knowledge of their authority and discretion, then persons or entities could become subject to fiduciary liability without notice. Such a result would not only be unfair, but it would also disserve a core purpose of ERISA, which is to create a system whereby accountable fiduciaries are motivated by their accountability to protect the interest of participants in ERISA plans. Plaintiffs' Complaint does not allege that Ms. Pocras is a named fiduciary. Plaintiffs exclude her name from their list of alleged "Named Fiduciaries" because they cannot identify any provision in either Plan that appoints Ms. Pocras to a fiduciary position. (Compl. ¶ 117.) Under the ESOP, only named "Trustees" are appointed as investment fiduciaries. (Ex. A, § 8.2(a).) These Trustees are identified in the prospectus by name: Lundstrom, Laphen, Witkowicz, and Luther. The name Pocras is absent from the list. Similarly, Ms. Pocras held no investment fiduciary duties under the Savings Plan. Such duties are allocated to the "Employee Benefits Committee." (Ex. C, Savings Plan Summary Plan Description at 11.) Plaintiffs make no allegation that she was a member of that Committee.

### 2. *At No Point Did Ms. Pocras Accept Fiduciary Responsibilities*

Not only was Ms. Pocras not a named fiduciary, she likewise did not usurp any responsibility for investing the Plans' assets away from the named fiduciaries. Plaintiffs do not

allege she did so. Instead, Plaintiffs describe Ms. Pocras' fiduciary activities as follows: possessing discretionary authority or control with respect to appointment of the Plans' fiduciaries and in regard to management of the Plans, exercising discretionary authority or responsibility regarding administration of the Plans, retaining authority or control regarding management of the Plans' assets, and signing and filing an SEC document. (Compl. ¶¶ 74, 83.) Plaintiffs further assert that Ms. Pocras' role on the Compensation Committee made her a fiduciary by virtue of the conclusory assertion that she "exercised discretionary authority with respect to the management and administration of the Plans and/or authority or control over the management and disposition of the Plans' assets. (*Id.* ¶ 97.) No allegations show how Ms. Pocras exercised any discretionary control over the Plans' assets. C*rowley v. Corning, Inc.,* 234 F. Supp. 2d 222, 229-30 (W.D.N.Y. 2002) (directors' fiduciary powers limited to appointing, retaining, and removing committee members and the power to appoint did not include the power to control the Plan's investment options or the responsibility to communicate Plan information). Plaintiffs' threadbare assertions, based largely on legal conclusions with no supporting facts, are woefully insufficient. Furthermore, Ms. Pocras was not a "functional" fiduciary. The Complaint contains no mention of any act or omission by Ms. Pocras concerning the Plans' assets. *In re Dynegy Inc. ERISA Litigation,* 309 F. Supp. 2d 861, 900-04, (S.D. Tex. 2004). Plaintiffs' repeated recitation of ERISA's definition of "fiduciary" in the Complaint does not magically convert Ms. Pocras into one. (*See., e.g.,* Compl. ¶¶ 119, 342, 355, 367, 378, 390, 396.)

Accordingly, the starting point in analyzing an ERISA breach of fiduciary duty claim is to determine whether a particular defendant was a fiduciary with respect to the particular activity at issue. *Pegram v. Hedrich*, 530 U.S. 211, 226 (2000); *Maniace,* 40 F.3d at 267; *Plumb*, 124 F.3d at 854. Because a person is a fiduciary only "to the extent" he or she performs

enumerated tasks, that person may be an ERISA fiduciary for some purposes and not for others. *Maniace*, 40 F.3d at 267.  A complaint, like Plaintiffs', containing merely conclusory statements that a defendant is a fiduciary fails to state a claim and should be dismissed.  *Sharp Elec. Corp. v. Metro. Life Ins. Co.*, 578 F.3d 505, 512 (7th Cir. 2009).

### 3. *Ms. Pocras Did Not Assume Any Fiduciary Duties As A Result of Any TierOne SEC Filings*

It is hornbook law that "fiduciary responsibility cannot be enforced against a defendant unless that defendant can be classified as a fiduciary with respect to the wrongdoing for which the remedy is sought."  James F. Jorden, *et al.*, *Handbook on ERISA Litigation* § 4.02 (3d ed. 2007).  Thus, a breach of fiduciary duty claim premised on alleged misstatements cannot stand on the naked allegation that the alleged misstatements were made; the plaintiff must plead facts that, if true, would show that the alleged misstatements were made by a fiduciary and relied upon by the participant.  Plaintiffs have failed to allege either of these two elements.  Here, Plaintiffs' claim is premised on alleged misstatements made to the public in company press releases or SEC filings.  (*See, eg.,* Compl. ¶¶ 236, 242, 246, 254, 268, 271, 274, 283, 288, 291.)  These press releases and SEC filings were made by TierOne and issued to the market as a whole and not to Plan participants as fiduciary communications.  Consequently, the alleged misstatements contained therein cannot form the basis of a breach of fiduciary duty claim.  *In re Calpine Corp. ERISA Litig.*, No. C 03-1685 SBA, 2005 WL 3288469, *10 (N.D. Cal. 2005) ("Plaintiff has also failed to show that the allegedly misleading SEC filings were communicated to the Plan participants by Calpine or the Committee Defendants while acting as Plan fiduciaries.")

The "failure to inform" claim also fails because Plaintiffs fail to allege that they read or relied on the alleged misstatements contained in the press releases or SEC filings. *See In re Elec. Data Sys. Corp. ERISA Litig.*, 224 F.R.D. 613, 628-30 (E.D. Tex. 2004) ("*EDS*") (concluding

-8-

that ERISA misrepresentation claim "requires individual determinations of materiality and reliance" even though plaintiffs "urge[d] the Court to apply securities law's fraud-on-the-market presumption in this ERISA context"; "[the] plaintiff must establish reasonable and detrimental reliance upon [the] material misrepresentation to recover for breach of fiduciary duty based on misrepresentations"). The district court in *EDS* concluded that the misrepresentation claims were more properly brought under ERISA § 502(a)(3) because of the reliance element. *See Langbecker v. Elec. Data Sys. Corp.*, 476 F.3d 299, 305 n.9 (5th Cir. 2007). The Complaint lacks any assertions that Ms. Pocras possessed information contrary to these public statements at the time they were made, nor does the Complaint demonstrate how these public statements were, in any way, false or misleading at the time they were made. Plaintiffs merely offer the conclusory observation that "Defendants knew or should have known that TierOne stock was an imprudent investment for the Plans . . ." (Compl. ¶ 180.) "A complaint that contains only conclusory allegations and lacking any factual assertions for support fails even the liberal standard of Federal Rule of Civil Procedure 12(b)(6)." *Crowley v. Corning, Inc*., 234 F. Supp. 2d 222, 230 (W.D.N.Y. 2002); *see also Frey v. City of Hercluaneum*, 44 F.3d 667 (8th Cir. 1995) (holding complaint to "fall short of meeting even the liberal standard for notice pleading since it is entirely conclusory giving no idea of what acts the individual defendants are accused of that could result in liability").

Plaintiffs' one specific allegation—that Ms. Pocras engaged in fiduciary communications by signing a Savings Plan Form S-8—fails because signing SEC disclosures is not ERISA fiduciary conduct. A communication implicates ERISA's fiduciary duties only "to the extent" that it was made in a fiduciary capacity. *See Pegram*, 530 U.S. at 222-23; *In re Huntington Bancshares ERISA Litig.*, 620 F. Supp. 2d 842, 854 (S.D. Ohio 2009). Individuals do not act as

ERISA fiduciaries "simply because [they make] statements about [the company's] expected financial condition or because an ordinary business decision turn[ed] out to have an adverse impact on the plan." *Varity v. Howe*, 516 U.S. 489, 505 (1996) (internal quotation marks omitted). Rather, communications are fiduciary in nature only if they are "*intentionally* connected" to benefits. *Id.* (emphasis in original); *In re Citigroup ERISA Litig.*, No. 07 Civ. 9790, 2009 WL 2762708, at *24 (S.D.N.Y. Aug. 31, 2009). Statements made in SEC filings, annual reports, corporate press releases, or in other communications to shareholders, regulators, investors, and customers are not "intentionally connected" to plan benefits, and thus are not made in an ERISA fiduciary capacity. *See, e.g.*, *Shirk v. Fifth Third Bancorp Inc.*, No. 05-cv-049, 2009 WL 692124, at *17 (S.D. Ohio Jan. 29, 2009). As the court in *Citigroup* stressed, "emerging caselaw makes clear that those 'who prepare SEC filings do not become ERISA fiduciaries through those acts' and, 'consequently, do not violate ERISA if the filings contain misrepresentations.'" 2009 WL 2762708, at *23 (quotation omitted).

As numerous courts have held, the fact that the plan materials incorporate SEC filings by reference does not change the analysis. *E.g.*, *In re Wachovia Corp. ERISA Litig.*, No. 3:09-cv-262, 2010 WL 3081359, at *16 (W.D.N.C. Aug. 6, 2010); *Lingis v. Motorola, Inc.*, 649 F. Supp. 2d 861, 876 (N.D. Ill. 2009); *Citigroup*, 2009 WL 2762708, at *24; *In re Bausch & Lomb, Inc. ERISA Litig.*, No. 06-cv-6297, 2008 WL 5234281, at *7 (W.D.N.Y. Dec. 12, 2008). In *Lingis*, for example, the court explained that "when Defendants incorporated the 10-Ks and 10-Qs into the Form S-8 that [the company] was required to file with the SEC on behalf of the Plan, [the company] was 'discharging its corporate duties under the securities laws, and was not acting as an ERISA fiduciary.'" 649 F. Supp. 2d at 875 (*quoting Kirschbaum v. Reliant Energy, Inc.*, 526 F.3d 243, 257 (5th Cir. 2008). Similarly, in *Shirk*, the court held the "preparation of SEC

filings is not an ERISA fiduciary act 'even if misleading and incorporated by reference in required ERISA disclosures.'" 2009 WL 692124, at *16 (quotation omitted). Therefore, "courts have dismissed ERISA claims alleging breaches of fiduciary duty to disclose in the employer stock context where the challenged statements consisted of SEC filings and statements made to the market." *Bausch & Lomb*, 2008 WL 5234281, at *7 (citations omitted); *see also Citigroup*, 2009 WL 2762708, at *24. Because the statements at issue were not made in an ERISA fiduciary capacity, Plaintiffs' claim in Count I should be dismissed.

### III. PLAINTIFFS FAIL TO STATE A CLAIM IN COUNT II FOR BREACH OF THE DUTY TO MONITOR THE PLANS

In Count II, Plaintiffs allege that the Director Defendants and Committee Defendants (the "Monitoring Defendants") breached the duty to monitor by failing to ensure that fiduciaries they appointed had access to information about TierOne's business problems and by failing to ensure that the appointed fiduciaries "appreciated the huge and unjustified risk" of significant investment in TierOne stock. (Compl. ¶ 372.) Plaintiffs also allege that the Monitoring Defendants breached their duties by allegedly concealing "accurate information about TierOne that the Monitoring Defendants knew or should have known that the fiduciaries needed in order to make sufficiently informed decisions," and participating in "the Company's inappropriate business practices, and their consequences, including the artificial inflation of the value of TierOne stock." (*Id.* ¶¶ 373, 381.) However, these conclusory allegations are circular and have no factual support.

Plaintiffs base their failure-to-monitor claim on a misreading of the Compensation Committee's Charter. Paragraph 96 of the Complaint alleges that Ms. Pocras has a duty to monitor by virtue of this policy statement formerly found on TierOne's website. The

-11-

Compensation Committee is not charged with being the investment fiduciary for the ESOP and Savings Plans. Instead, the Compensation Committee Charter states:

> The primary purpose of the Compensation Committee (the "Committee") of the Board of Directors (the "Board") of TierOne Corporation (the "Company") is to discharge the Committee's responsibilities as provided herein relating to compensation of the Company's executive officers and directors and to produce an annual report on executive compensation for inclusion in the Company's Proxy Statement, in accordance with the rules and regulations of the Securities and Exchange Commission (the "SEC").

(Ex. D, Compensation Committee Charter.)

The Compensation Committee Charter does not reference the ESOP or Savings Plan. The references to the 2003 Stock Option Plan and the 2003 Management Recognition and Retention Plan and Trust Agreement[3] are irrelevant because they are executive compensation plans and are not the qualified retirement plans in dispute here.

Plaintiffs fail to identify a single example of Director Defendants' and Committee Defendants' alleged omissions or concealments of information. Plaintiffs' duty-to-monitor claim should be dismissed for the reason that their allegations are insufficient under *Twombly/Iqbal*. Under ERISA, the duty to monitor appointed fiduciaries is limited. *See In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.*, 312 F. Supp. 2d 1165, 1176 ("The Scope of the duty to monitor appointees is relatively narrow") (*citing Coyne & Delany Co. v. Selman*, 98 F.3d 1457, 1466 n.10 (4th Cir. 1996) "[w]e do not mean to suggest that the responsibility to monitor appointees exposes the appointing fiduciary to open-ended liability. On the contrary, courts have properly taken a restrictive view of the scope of this duty and its attendant potential for liability.").) Fiduciaries who appoint other fiduciaries should monitor the performance of their

---

[3] Paragraph 4 of the "Committee Duties and Responsibilities" states: "To make recommendations to the Board with respect to the Company's incentive compensation plans and equity-based plans, including the 2003 Stock Option Plan and the 2003 Management Recognition and Retention Plan and Trust Agreement, to oversee the activities of the individuals and committees responsible for administering these plans, and to discharge any responsibilities, if any, imposed on the Committee by any of these plans."

appointees as "a natural extension of the duty to appoint and remove plan fiduciaries." *See Lingis v. Motorola, Inc.*, 649 F. Supp. 2d, 861, 882 (N.D. Ill. 2009). Under Department of Labor regulations, those who monitor others are expected simply to review the fiduciaries' performance "at reasonable intervals" and "in such manner as may be reasonably expected to ensure that their performance has been in compliance with the terms of the plan and statutory standards, and satisfies the needs of the plan." 29 C.F.R. § 2509.75-8 at FR-17. They are not obligated to examine and "monitor the prudence of the individual investments offered under the Plan" or of each action the appointed fiduciaries take. *Lingis*, 649 F. Supp. 2d at 882.

To state a claim, Plaintiffs must allege facts to support a plausible claim that Defendants appointed an unqualified person and then did not periodically review the performance of the appointed fiduciaries. *See In re Calpine Corp. ERISA Litig.*, 2005 WL 1431506, at *6; *see also Shirk*, 2009 WL 692124, at *19. Here, the Complaint does not provide any allegations, much less allegations that are sufficient under *Twombly*/*Iqbal*, as to whether or how Defendants failed to review the performance of the Committee appointees at reasonable intervals. *Twombly*, 550 U.S. at 555 (stating "formulaic recitation of the elements of a cause of action will not do"). Plaintiffs vaguely allege that the Monitoring Defendants failed to ensure that the monitored fiduciaries had access to knowledge about the Company's business problems and failed to ensure that the fiduciaries appreciated the risk. (Compl. ¶ 372.) However, Plaintiffs do not set forth allegations as to what actions were not taken or how the Monitoring Defendants failed to monitor the appointed fiduciaries.

Plaintiffs also allege that the Monitoring Defendants failed to ensure that the monitored fiduciaries had access to or concealed information essential to enable them to perform their duties. That allegation suffers from two fundamental flaws. *First*, ERISA does not impose a

duty to provide non-public information as part of the duty to monitor. *See Calpine*, 2005 WL 1431506 at *6; *Herrington v. Household Int'l, Inc.*, No. 02C8257, 2004 WL 719355, at *9 (N.D. Ill. Mar. 31, 2004). Such a requirement is "burdensome" and "too broad as it would require defendants to continuously gather and disclose nonpublic information." *Herrington*, 2004 WL 719355, at *8 (dismissing claim).

*Second*, even if monitoring fiduciaries are presumed to have such a duty, Plaintiffs' allegations regarding information that was not disclosed are conclusory. Plaintiffs simply allege that the Monitoring Defendants failed to ensure that the fiduciaries had "access to knowledge about the Company's business problems" and concealed "accurate information about TierOne that the Monitoring Defendants knew or should have known that the fiduciaries needed in order to make sufficiently informed decisions." (Compl. ¶¶ 372-73.) Plaintiffs do not make any effort to identify what information the Monitoring Defendants had, how they acquired that information, or what information they allegedly withheld from the appointed fiduciaries.

In addition, the Complaint does not even identify the appointed fiduciaries, and thus makes no allegations as to how those fiduciaries—presumably TierOne employees—would not already be in possession of superior information about TierOne's business than the outside directors and others who make up the Monitoring Defendants. Indeed, the Complaint contains no plausible allegations that the Appointing and Monitoring Fiduciaries had information that was necessary for informed decision-making about TierOne stock that was not also in the possession of the appointed fiduciaries. Because Plaintiffs have failed to state a claim, Count II should be dismissed with prejudice.

### A.  Plaintiffs' "Failure To Disclose" Claim Fails

The Supreme Court made it clear in *Varity Corp. v. Howe* that ERISA liability was implicated only where a defendant has "intentionally connected its statements about [the

-14-

company's] financial health to statements it made about the future of benefits, so that its intended communication about the security and benefits was rendered materially misleading." 516 U.S. 489, 505 (1996) ("We do not hold . . . Varity acted as a fiduciary simply because it made statements about its expected financial condition or because 'an ordinary business decision turn[ed] out to have an adverse impact on the plan.'"); *In re Reliant Energy ERISA Litig.*, No. CIV.A. H-02-2051, 2006 WL 148898, at *4 (S.D. Tex. Jan. 18, 2006) (dismissing fiduciary breach claim premised on alleged negligent misrepresentations made by company in SEC filings).

Plaintiffs do not allege that Ms. Pocras intentionally connected TierOne's SEC filings with statements made about future benefits. Nor do they allege that Ms. Pocras encouraged Plan Participants to rely on TierOne's SEC filings in making investment decisions. Accordingly, the "failure to disclose" claim fails because the alleged misrepresentations were not fiduciary communications subject to ERISA. *See Wilson v. Southwestern Bell Tel. Co.*, 55 F.3d 399, 406 (8th Cir. 1995) ("Employer fiduciaries are not required to provide general business information to potential plan participants, and do not violate their duties by failing to disclose such information.").

### B.  ERISA Does Not Require Fiduciaries To Disclose Non-Public Information To Plan Participants

ERISA sets forth a detailed disclosure scheme under which plan fiduciaries and administrators are required to disclose specific information to plan participants. *See* ERISA § 101, *et seq.*, 29 U.S.C. § 1021, *et seq.* ERISA does not alter or supersede federal securities laws. ERISA § 514(d), 29 U.S.C. § 1144(d). Requiring plan fiduciaries to selectively disclose non-public information to participants would put fiduciaries at substantial risk of violating securities laws prohibiting insider trading. *See* 15 U.S.C. §§ 77j(b), 78u-4(b); *see also Wright v.*

*Oregon Metallurgical Corp.*, 360 F.3d 1090, 1098 n.4 (9th Cir. 2004) (noting that divesting plan assets based on "inside information . . . could potentially run afoul of the federal securities laws."). ERISA does not require plan fiduciaries to choose between violating ERISA or violating securities laws.

ERISA also does not require the disclosure of non-public information concerning a company's financial prospects. Plaintiffs try to create such a duty from whole cloth by suggesting that ERISA's *general* fiduciary duty provisions somehow require the disclosure of such information, even though ERISA's *specific* disclosure provisions do not. (*See* Compl. ¶¶ 180, 220, 260, 318, 349, 373, 381, 400.) Once again, Plaintiffs ignore controlling authority. In *Ehlmann v. Kaiser Found. Health Plan of Texas*, the Fifth Circuit, applying "the canon of statutory construction that the specific language in a statute rules the general," held that ERISA's general fiduciary duty provision does not impose a greater duty to disclose information to plan participants than those already specifically provided for by ERISA. 198 F.3d 552, 555-56 (5th Cir. 2000) (*citing Sprague v. General Motors Corp.*, 133 F.3d 388, 405 (6th Cir. 1998) *cert. denied*, 524 U.S. 923 (1998); *accord Faircloth v. Lundy Packing Co.*, 91 F.3d 648 (4th Cir. 1996). The Court warned that "this court should not add to the specific disclosure requirements that ERISA already provides." *Id*. at 555. Plaintiffs invite this Court to do just that.[4]

---

[4] Application of the "efficient markets theory" also reveals yet another flaw in Plaintiffs' theory: In light of the truism that markets react quickly to new information, Plaintiffs have failed to explain how market wide disclosure of TierOne's alleged accounting irregularities would have avoided any losses to the Plan. As the *McKesson* court noted, "[e]ven if [the defendant fiduciary] had disclosed the accounting irregularities . . . [the company stock price] presumably would have taken the same precipitous plunge and any argument otherwise would be pure speculation." *In re McKesson HBOC Inc. ERISA Litig.*, 391 F. Supp. 2d 812, 837 n.25 (N.D. Cal. 2005). The same is true here. The efficient market theory, thus, also bars Plaintiffs' disclosure claim.

## IV. PLAINTIFFS' CLAIMS FOR FAILING TO AVOID CONFLICTS OF INTEREST AND FOR CO-FIDUCIARY LIABILITY ARE DERIVATIVE AND SHOULD BE DISMISSED

Plaintiffs' two remaining claims—failure to avoid conflicts of interest (Count III) and for co-fiduciary liability (a part of Count I, II, and III)—are derivative of their prudence claim. These claims "do not provide independent grounds for relief, but rather depend upon the establishment of an underlying breach of fiduciary duty cognizable under ERISA." *In re Duke Energy ERISA Litig.*, 281 F. Supp. 2d 786, 795 (W.D.N.C. 2003), *see also* ERISA § 405(a), 29 U.S.C. § 1105(a). The Court considered a similar set of derivative fiduciary breach claims involving ERISA "stock drop claims" in *In re Harley-Davidson, Inc. Securities Litigation*, 660 F. Supp. 2d 953, 968 (E.D. Wis. 2009). The court explained that because Plaintiff had failed to state a valid claim for breach of the fiduciary duty of prudence under ERISA, "[c]onsequently, related and derivative allegations of breach of a duty of loyalty, duty to monitor and investigate, co-fiduciary liability, and knowing breach of fiduciary duty . . . fail as a matter of law." *Id.; accord*, *In re Radioshack Corp. ERISA Litig.*, 547 F. Supp. 2d 606, 616 (N.D. Tex. 2008).

Because, as demonstrated above, Ms. Pocras did not act as an investment fiduciary for the Plans, there is no underlying breach of the ERISA fiduciary duty of prudence that supports these two claims. Consequently, these two derivative claims fail, as a matter of law. *Id.*

## CONCLUSION

For the foregoing reasons, Ms. Pocras respectfully requests that the Complaint be dismissed with prejudice and that judgment be entered in her favor.

                                                Respectfully submitted,

Dated:  November 15, 2010         By:  s/ William C. O'Neil

                                                Timothy J. Rivelli
                                                William C. O'Neil
                                                **WINSTON & STRAWN LLP**
                                                35 W. Wacker Drive
                                                Chicago, IL 60601-9703
                                                TEL:  (312) 558-5308
                                                FAX:  (312) 558-5700
                                                Email: woneil@winston.com

                                                James P. Baker
                                                **WINSTON & STRAWN LLP**
                                                101 California Street, 39th Floor
                                                San Francisco, CA  94111-5802
                                                TEL:  (415) 591-1000
                                                FAX:  (415) 591-1400

                                                *Attorneys for Defendant Joyce Pocras*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on November 15, 2010, I caused a true and correct copy of the foregoing ***DEFENDANT JOYCE PERSON POCRAS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS*** to be served on counsel of record via electronic filing through the Court's ECF system.

s/ William C. O'Neil
William C. O'Neil