# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| SUSAN E. BREDTHAUER, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | )      4:10CV3132 |
| | ) |
| GILBERT G. LUNDSTROM, *et al.*, | )      ORAL ARGUMENT REQUESTED |
| | ) |
| Defendants, | ) |
| | ) |
| and | ) |
| | ) |
| RONALD A. LAIRD, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | )      4:10CV3139 |
| v. | ) |
| | )      ORAL ARGUMENT REQUESTED |
| GILBERT G. LUNDSTROM, *et al.*, | ) |
| | ) |
| Defendants, | ) |
| | ) |
| and | ) |
| | ) |
| SUSAN BARKER, | ) |
| | ) |
| Plaintiff, | ) |
| | )      08:10CV326 |
| v. | ) |
| | )      ORAL ARGUMENT REQUESTED |
| SAMUEL P. BAIRD, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS' OMNIBUS MOTION TO DISMISS ALL CLAIMS

## TABLE OF CONTENTS

INTRODUCTION..............................................................................................................1

FACTUAL BACKGROUND ...........................................................................................3

ARGUMENT ...................................................................................................................10

I.     Count I — Breach Of Fiduciary Duty To Prudently Manage The Plans And The Plans' Assets — Fails To State A Claim. ........................................................13

     A.     Defendants Do Not Have Any Fiduciary Liability For Allowing Continued Investment In TierOne Stock Because Removing TierOne Stock Was A Settlor Function, Not A Fiduciary Function. ...........................14

     B.     Under ERISA's Express Terms, Defendants Cannot Be Liable For Not Diversifying The Plans. .........................................................................21

     C.     Even If Defendants Had Some Discretion With Respect To Offering Employer Stock As An Investment Option — Which They Did Not — Plaintiffs Fail To State A Plausible Imprudence Claim. ...................................22

          1.     Under ERISA, Continued Investment In Employer Stock Is Presumed To Be Prudent. .........................................................23

          2.     Plaintiffs' Allegations Fail To Overcome The *Moench* Presumption........................................................................................26

     D.     Plaintiffs Also Fail To State A Claim In Count I Based On Defendants' Alleged Communications About TierOne....................................30

          1.     Plaintiffs Fail To State A Claim Based On Alleged Statements In TierOne's SEC Filings Or Public Statements Because They Were Not Fiduciary Communications. ...................................................31

          2.     Plaintiffs Fail To Allege Any Duty That Defendants Breached..........33

          3.     Plaintiffs Fail To Identify Any Inaccurate Material Information In TierOne's Disclosures. ...................................................36

II.     Count II – Breach Of Fiduciary Duty To Monitor The Plans – Fails To State A Claim. ....................................................................................................................38

     A.     The Duty To Monitor Claim Fails Because There Is No Viable Underlying Breach Of Fiduciary Duty Claim. ...................................................38

     B.     Plaintiffs' Conclusory Allegations That The Monitoring Defendants Breached Their Duties Are Insufficient To State A Claim Under ERISA. ..............................................................................................................39

**III.**   **Count III – Breach Of Duty To Avoid Conflicts – Fails Because Plaintiffs Cannot Establish That Defendants Breached Their Duties Under ERISA.** ...........................41

**IV.**   **Plaintiffs Fail To State A Claim For Co-Fiduciary Liability.** .......................................44

**CONCLUSION** ............................................................................................................45

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Ashcroft v. Iqbal*,
129 S. Ct. 1937 (2009).................................................................................................12, 13

*Baker v. Kingsley*,
387 F.3d 649 (7th Cir. 2004) ............................................................................................35

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007).....................................................................................................12, 39

*Boggs v. Boggs*,
520 U.S. 833 (1997)..........................................................................................................20

*Braden v. Wal-Mart, Inc.*,
588 F.3d 585 (8th Cir. 2009) ............................................................................................35

*Bunch v. W.R. Grace & Co.*,
555 F.3d 1 (1st Cir. 2009).............................................................................................27, 29

*C.N. v. Willmar Pub. Schools, Indep. School Dist. No. 347*,
591 F.3d 624 (8th Cir. 2010) ............................................................................................12

*Curtiss-Wright Corp. v. Schoonejongen*,
514 U.S. 73 (1995)........................................................................................................18, 20

*DeBruyne v. Equitable Life Assur. Soc. of U.S.*,
720 F. Supp. 1342 (N.D. Ill. 1989) ..................................................................................29

*DeBruyne v. Equitable Life Assur. Soc. of U.S.*,
920 F.2d 457 (7th Cir. 1990) ............................................................................................27

*DiFelice v. U.S. Airways, Inc.*,
497 F.3d 410 (4th Cir. 2007) ............................................................................................27

*Donovan v. Cunningham*,
716 F.2d 1455 (5th Cir. 1983) ..........................................................................................24

*Eckert v. Titan Tire Corp.*,
514 F.3d 801 (8th Cir. 2008) ............................................................................................12

*Edgar v. Avaya, Inc.*,
503 F.3d 340 (3d Cir. 2007)...................................................................................... passim

*Gearren v. McGraw-Hill Cos.*,
690 F. Supp. 2d 254 (S.D.N.Y. 2010)...........................................................................19, 20

iii

*Harris v. Amgen, Inc.*,
    No. 07-CV-5442, 2010 WL 744123 (C.D. Cal. Mar. 2, 2010)........................................17, 24

*Herrington v. Household Int'l, Inc.*,
    No. 02C8257, 2004 WL 719355 (N.D. Ill. March 31, 2004) ...................................................40

*Hickman v. Tosco Corp.*,
    840 F.2d 564 (8th Cir. 1998) ................................................................................................42

*Hughes Aircraft Co. v. Jacobson*,
    525 U.S. 432 (1999)..............................................................................................................17

*In re American Express Co. ERISA Litig.*,
    08 Civ. 10834, 2010 WL 4371434 (S.D.N.Y. Nov. 2, 2010) ........................................ passim

*In re Bausch & Lomb, Inc. ERISA Litig.*,
    No. 06-cv-6297, 2008 WL 5234281 (W.D.N.Y. Dec. 12, 2008) ...........................................32

*In re Beazer Homes USA, Inc. ERISA Litig.*,
    No. 1:07-CV-0952, 2010 WL 1416150 (N.D. Ga. Apr. 2, 2010)...........................................21

*In re Calpine Corp. ERISA Litig.*,
    No. C-03-1685, 2005 WL 1431506 (N.D. Cal. Mar. 31, 2005) ........................................39, 40

*In re Citigroup ERISA Litig.*,
    No. 07 Civ. 9790, 2009 WL 2762708 (S.D.N.Y. Aug. 31, 2009) ................................. passim

*In re Ferro Corp. ERISA Litig.*,
    422 F. Supp. 2d 850 (N.D. Ohio 2006)..................................................................................19

*In re Harley-Davidson, Inc. Sec. Litig.*,
    660 F. Supp. 2d 953 (E.D. Wis. 2009)..............................................................................24, 38

*In re Huntington Bancshares Inc. ERISA Litig.*,
    620 F. Supp. 2d 842 (S.D. Ohio 2009) ......................................................................... passim

*In re Lehman Bros. Sec. & ERISA Litig.*,
    683 F. Supp. 2d 294 (S.D.N.Y. 2010)..............................................................................24, 27

*In re McKesson HBOC, Inc. ERISA Litig.*,
    No. 00-20030, 2002 WL 31431588 (N.D. Cal. Sept. 30, 2002) ............................................44

*In re Polaroid ERISA Litig.*,
    362 F. Supp. 2d 461 (S.D.N.Y. 2005)..............................................................................19, 20

*In re Sears, Roebuck & Co. ERISA Litig.*,
    No. 02C8324, 2004 WL 407007 (N.D. Ill. Mar. 3, 2004) .....................................................44

*In re Sprint Corp. ERISA Litig.*,
   388 F. Supp. 2d 1207 (D. Kan. 2004) .................................................................................19

*In re Wachovia Corp. ERISA Litig.*,
   No. 3:09cv262, 2010 WL 3081359 (W.D.N.C. Aug. 6, 2010) ...................................... passim

*In re Xerox Corp. ERISA Litig.*,
   483 F. Supp. 2d 206 (D. Conn. 2007) .................................................................................42

*Jenisio v. Ozark Airlines, Inc. Ret. Plan For Agent & Clerical Emps.*,
   187 F.3d 970 (8th Cir. 1999) ................................................................................................3

*Johnson v. Radian Group Inc.*,
   No. 08-2007, 2009 WL 2137241 (E.D. Pa. July 16, 2009) ........................................... passim

*Kalda v. Sioux Valley Phys. Partners*,
   481 F.3d 639 (8th Cir. 2007) .........................................................................................17, 33

*Kennedy v. Plan Adm'r for DuPont Sav. & Inv. Plan*,
   129 S. Ct. 865 (2009) ........................................................................................................20

*Kirschbaum v. Reliant Energy, Inc.*,
   526 F.3d 243 (5th Cir. 2008) ....................................................................................... passim

*Kushner v. Beverly Enters., Inc.*,
   317 F.3d 820 (8th Cir. 2003) ................................................................................................3

*Lanfear v. Home Depot Inc.*,
   --- F. Supp. 2d ----, No. 07-cv-0197, 2010 WL 2427413 (N.D. Ga. June 7, 2010) ...........21, 22

*Lingis v. Motorola, Inc.*,
   649 F. Supp. 2d 861 (N.D. Ill. 2009) ............................................................................ passim

*Little Gem Life Sciences, LLC v. Orphan Med., Inc.*,
   537 F.3d 913 (8th Cir. 2008) ................................................................................................3

*Lockheed Corp. v. Spink*,
   517 U.S. 882 (1996) ..........................................................................................................17

*Martin v. Feilen*,
   965 F.2d 660 (8th Cir. 1992) .........................................................................................11, 24

*Mellot v. Choice Point, Inc.*,
   561 F. Supp. 2d 1305 (N.D. Ga. 2007) ..........................................................................42, 43

*Moench v. Robertson*,
   62 F.3d 553 (3d Cir. 1995).....................................................................................11, 23, 25

*Pedraza v. Coca-Cola Co.*,
    456 F. Supp. 2d 1262 (N.D. Ga. 2006) ...................................................................21

*Pegram v. Herdrich*,
    530 U.S. 211 (2000) ...................................................................13, 14, 31, 42

*Portz v. Hartford Life & Accident Ins Co.*,
    No. 8:07CV478, 2008 WL 2986272 (D. Neb. July 31, 2008) ...................................................................3

*Precision Indus., Inc. v. Tyson Foods, Inc.*,
    No. 8:09CV195, 2009 WL 4377558 (D. Neb. Nov. 25, 2009).........................................12, 13

*Pugh v. Tribune Co.*,
    521 F.3d 686 (7th Cir. 2008) ...................................................................38

*Quan v. Computer Sci. Corp.*,
    --- F.3d ----, 2010 WL 3784702 (9th Cir. Sept. 30, 2010)...................................................................23

*Sharp Elecs. Corp. v. Metropolitan Life Ins. Co.*,
    578 F.3d 505 (7th Cir. 2009) ...................................................................12

*Shirk v. Fifth Third Bancorp*,
    No. 05-cv-049, 2009 WL 692124 (S.D. Ohio Jan. 29, 2009)........................................ passim

*Siskind* v. *Sperry Ret. Program, Unisys*,
    47 F.3d 498 (2d Cir. 1995)...................................................................18

*Summers v. UAL Corp.*,
    No. 03 C 1537, 2005 WL 2648670 (N.D. Ill. Oct. 12, 2005) ...................................................................28

*Sweeney v. Kroger Co.*,
    773 F. Supp. 1266 (E.D. Mo. 1991)...................................................................34

*Varity v. Howe*,
    516 U.S. 489 (1996)...................................................................31

*Ward v. Avaya Inc.*,
    No. 07-3246, 2008 WL 4888494 (3d Cir. Nov. 13, 2008) ...................................................................24

*Wright v. Medtronic, Inc.*,
    No. 09-CV-0443, 2010 WL 1027808 (D. Minn. Mar. 17, 2010) .................................. passim

*Zoltek Corp. v. Structural Polymer Group*,
    592 F.3d 893 (8th Cir. 2010) ...................................................................12

**STATUTES**

29 U.S.C. § 1002(21)(A)...................................................................14

29 U.S.C. § 1102(a)(1) .................................................................................................20

29 U.S.C. § 1104(a)(1)(A) ...........................................................................................41

29 U.S.C. § 1104(a)(1)(A)(i) ........................................................................................13

29 U.S.C. § 1104(a)(1)(B) ............................................................................................13

29 U.S.C. § 1104(a)(1)(C) ............................................................................................21

29 U.S.C. § 1104(a)(1)(D) ...........................................................................................17

29 U.S.C. § 1104(a)(2) ............................................................................................21, 22

29 U.S.C. § 1105(a) ......................................................................................................44

29 U.S.C. § 1107 ...........................................................................................................11

**OTHER AUTHORITIES**

29 C.F.R. § 2509.75-8 ..................................................................................................39

Rule 12(b)(6) of the Federal Rules of Civil Procedure .............................................1, 3

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, defendants Samuel P. Baird, Charles W. Hoskins, James E. McClurg, Campbell R. McConnell, James W. Strand, Gale R. Furnas, Roger Ludemann, Gilbert G. Lundstrom, Paula Luther, Larry Pfeil, Eugene B. Witkowicz, Patricia Young, James A. Laphen, Joyce Person Pocras, and Ann Lindley Spence (collectively the "Defendants"), by and through their undersigned counsel, respectfully submit this memorandum in support of their motion to dismiss with prejudice all claims against them.

## INTRODUCTION

This nation has and continues to endure a financial and real estate crisis of unprecedented proportion. By any measure, this crisis has caused the greatest economic decline since the Great Depression. The crisis has battered virtually every facet of the economy, but it has decimated the banking industry in particular. We have seen the failure of America's two largest mortgage entities; the bankruptcy of a major investment bank; the sale of others; and the nationalization of the world's largest insurance company. The headlines have been dominated by the losses of large multi-national banks, which the federal government bailed out under its Troubled Asset Relief Program ("TARP") because they were considered "too big to fail." However, scores of smaller regional banks, especially ones focused on real estate lending, have been wiped out because they were too small to receive government financial support or otherwise to survive the crisis. One of those banks, TierOne Bank, was a mid-sized regional bank in Nebraska that existed for 100 years before the crisis. TierOne Bank was able to weather the crisis for over two years. Nevertheless, because of plummeting real estate values and rising loan losses, federal regulators closed TierOne Bank in June 2010. The bank's holding company, TierOne Corporation ("TierOne"), filed for bankruptcy shortly thereafter.

In this action, seven former TierOne employees allege that Defendants, who are former TierOne executives or directors, breached fiduciary duties under the Employee Retirement

Income Security Act ("ERISA").  Each plaintiff — along with each class member they hope to represent — either chose to invest in TierOne stock as part of the plaintiff's 401(k) savings plan or held TierOne stock through TierOne's employee stock ownership plan.  Not surprisingly, like those who held stock in hundreds of other banks in recent years, Plaintiffs' holdings in TierOne stock decreased in value as the financial and real estate crisis progressed.  Plaintiffs now have sued, claiming that they incurred losses because Defendants supposedly breached their ERISA fiduciary duties by continuing to allow Plaintiffs to invest in TierOne stock.  When stripped of its rhetoric and unsupported allegations, the Complaint faults Defendants for failing to foresee the full extent of the real estate crisis and its effect on TierOne, and for failing to warn plan participants accordingly.  In the guise of an ERISA suit, Plaintiffs hope to avoid the consequences of their investment decisions and blame Defendants for a global meltdown virtually no one anticipated.

ERISA does not shield plaintiffs from economic downturns or the negative performance of their employers' stock.  Nor does ERISA require fiduciaries to predict the future, to provide investment advice, or to ensure that plan participants receive a guaranteed return.  ERISA does require that fiduciaries act reasonably and operate benefit plans according to their terms, as Defendants did here.  In these circumstances — including those involving the financial crisis — federal courts regularly dismiss ERISA claims premised on large stock drops.  For the reasons set forth below, the Complaint should be dismissed with prejudice against all Defendants.[1]

---

[1]   As shown in a separately filed motions to dismiss, defendants Baird, Hoskins, McClurg, McConnell, Strand, Pocras and Spence are not ERISA fiduciaries with respect to the conduct alleged and should be dismissed for that additional and independent reason as well.

## FACTUAL BACKGROUND

**TierOne Corporation and TierOne Bank.**

TierOne was a bank holding company founded in 1907.  Doc. No. 57 (Compl.) ¶ 23.[2]

Since an initial public offering in October 2002, its stock traded publicly on the NASDAQ

exchange.  *Id.* ¶¶ 24, 27.  Its wholly-owned subsidiary, TierOne Bank, was a mid-sized regional

bank operating mainly in Nebraska, Iowa and Kansas.  *Id.* ¶ 4.  Beginning in 2002, TierOne

sought to shift its business strategy to focus increasingly on multi-family residential real estate,

commercial real estate, land development, and construction lending.  *See id.* ¶¶ 187, 223; Index

Ex. 1 (2008 Form 10-K).[3]

**The Savings Plan.**

Beginning in 1978, TierOne Bank sponsored a 401(k) savings plan (the "Savings Plan")

for its employees.  Doc. No. 57 (Compl.) ¶ 31; Index Ex. 2 at 1 (Plan).  The Savings Plan is a

defined contribution benefit plan under which participants contributed to individual accounts and

chose for themselves how to invest those contributions.  *See* Index Ex. 3 at 7, 12 (Savings Plan

---

[2]   For their motion to dismiss only, Defendants accept the Complaint's factual allegations as true unless otherwise noted, but they do not otherwise accept or acknowledge the Complaint's allegations or conclusions.

[3]   In the Eighth Circuit, courts may consider Securities and Exchange Commission filings on a motion to dismiss.  *Little Gem Life Sciences, LLC v. Orphan Med., Inc*., 537 F.3d 913, 916 (8th Cir. 2008).  Courts considering a motion to dismiss also may look to documents not attached to the complaint if the parties rely on them, do not dispute the document's authenticity, the complaint references the document, and it is central to plaintiff's claims.  *See Kushner v. Beverly Enters., Inc*., 317 F.3d 820, 831 (8th Cir. 2003) (affirming dismissal). This applies to ERISA plan documents as well.  *Portz v. Hartford Life & Accident Ins Co.*, No. 8:07CV478, 2008 WL 2986272, at *6 (D. Neb. July 31, 2008) (Bataillon, J.) (dismissing ERISA claim); *see also Jenisio v. Ozark Airlines, Inc. Ret. Plan For Agent & Clerical Emps.*, 187 F.3d 970, 972 n.3 (8th Cir. 1999).  Defendants have provided an Evidence Index of materials in support of their motion pursuant to NebCivR 7.0.1(a).  Defendants also respectfully request oral argument on this motion pursuant to NebCivR 7.0.1.(d).

Summary Plan Description (the "SPD")); *see also* Doc. No. 57 (Compl.) ¶ 131.[4]  TierOne also

made matching contributions to participants' accounts and employees chose how to invest the

matching contributions.  Plan participants maintained complete control over the investment of

their Savings Plan accounts among numerous investment choices.  *See* Index Ex. 3 at 7, 12.

TierOne Bank was the Saving Plan's sponsor (Doc. No. 57 (Compl.) ¶ 31), and it had the

sole power to amend the Savings Plan.  Index Ex. 2 at § 10.01.  To administer the Savings Plan,

however, TierOne Bank created an Employee Benefit Committee ("EBC").  Doc. No. 57

(Compl.) ¶¶ 103, 136.  The EBC's duties included, among other things, "determin[ing] the nature

and characteristics of the investment funds."  Index Ex. 3 at 11.  Plaintiffs fail to allege which of

the Defendants were EBC members.  Doc. No. 57 (Compl.) ¶ 99.  Plaintiffs do allege that

TierOne Bank's Board appointed the EBC's members.  *Id*. ¶¶ 83, 101, 125.  Yet Plaintiffs fail to

allege which of the Director Defendants (as defined in the Complaint), who served at different

times and for different periods, actually appointed the EBC members.

As of December 31, 2009, the Savings Plan offered 25 investment options, including a

wide range of bond funds, balanced funds, and domestic and global stock mutual funds that

allowed participants to invest according to level of risk that they desired.  *See* Index Ex. 3 at 7

(SPD).  Employees also could choose to invest in TierOne stock through the Savings Plan.  The

Savings Plan expressly required that one of its investment options be the TierOne Employer

Stock Fund (the "Stock Fund"), which consisted of TierOne common stock.  *See* Index Ex. 2 at

1, 21 (Plan); Index Ex. 3 at 4 (SPD).

---

4   Plaintiffs attached as exhibits to the Complaint outdated SPDs for the Savings Plan and the
    ESOP from 2002 and 2003.  However, those SPDs were superseded by new SPDs that were
    attached to the complaint filed by the plaintiffs in *Barker v. Baird*, No. 08:10CV326.
    Because those updated SPDs more accurately reflect the Plans during the alleged Class
    Period, Defendants refer to them in this memorandum.

Although the Savings Plan required that the Stock Fund be an investment option, participants were not required to invest in the Stock Fund. Participants could invest in any option they wished, and no portion of the participants' accounts would be invested in TierOne stock unless participants affirmatively chose to invest in TierOne. The Savings Plan specifically stated that unless participants chose to invest in the Stock Fund, they were "deemed to have elected to have their Accounts invested wholly in other investment options." Index Ex. 2 at § 4.01A (Plan). During the Class Period, participants chose to hold roughly 4-5% of TierOne's outstanding shares through the Savings Plan. *See* Index Ex. 4 (2008, 2009, and 2010 Form SC 13G).

Savings Plan materials contained express warnings to participants about investments in the Stock Fund. For example, the materials stated that "[i]nvestments in the Employer Stock Fund involve certain special risks as they are an indirect investment in TierOne common stock and by definition are not diversified." Index Ex. 3 at 4 (SPD). Participants were advised that, because of those risks, they should "feel no pressure, one way or the other, to invest or not invest any portion of your account in the Employer Stock [Fund]." *Id*. at 5. Participants also were advised expressly about the Stock Fund's performance relative to other options. For example, the SPD disclosed to participants that each year between 2006 and 2009 the Stock Fund had the lowest or one of the lowest returns among 22 Savings Plan options. *Id*. at 8.

**The ESOP.**

Beginning in October 2002, TierOne and TierOne Bank together sponsored an Employee Stock Ownership Plan ("ESOP") that was separate from the Savings Plan.[5] The ESOP was

---

5    The ESOP refers to the "Employer," which is defined as TierOne and TierOne Bank collectively, and both TierOne and TierOne Bank signed the ESOP. Index Ex. 5 at 1. For simplicity, this memorandum will refer to TierOne in discussing the ESOP.

designed "to enable [TierOne] employees to acquire a proprietary interest in capital stock of [TierOne]." Index Ex. 5 at 1 (ESOP). The ESOP Trust held roughly 1.7 million shares of TierOne stock, which was approximately 9% of TierOne's total shares. *See* Index Ex. 4 (2008, 2009, and 2010 Form SC 13G). TierOne was named as the administrator of the ESOP, but as with the Savings Plan, it delegated those responsibilities to an ESOP Committee. Doc. No. 57 (Compl.) ¶¶ 112, 151. Plaintiffs fail to identify the members of the ESOP Committee, as well as which Director Defendants appointed them and when the members were appointed. *Id.* ¶ 107.

When TierOne established the ESOP, the ESOP borrowed approximately $18 million from TierOne and used that money to buy shares of TierOne stock. Index Ex. 6 at 3 (ESOP SPD). That stock was placed in a "suspense account." *Id.* TierOne made annual contributions to the ESOP, which used those contributions to pay down the loan. *Id.* As the loan was paid down, a portion of the TierOne stock was released from the suspense account and allocated to each eligible participant's ESOP account according to the terms of the ESOP. *Id.* All of the assets of the ESOP were held in a trust fund and managed by a trustee, currently Principal Trust Company. *Id.*; *see also* Index Ex. 7 (Trust Agreement). The ESOP's terms required that the assets of the ESOP be "invested primarily" in TierOne Stock. *E.g.*, Index Ex. 5 at 1, and § 5.1 (ESOP); *see also* Index Ex. 7 at 2 (Trust Agreement).

**The Global Real Estate and Financial Crisis.**

For more than 100 years, TierOne operated as a successful company. Beginning around 2002, TierOne sought to adapt to the changing and competitive environment that it and other mid-sized regional banks faced and to enhance its return to its shareholders, including plan participants, by increasing its focus in multi-family residential real estate, commercial real estate, land development, and construction lending. Doc. No. 57 (Compl.) ¶¶ 187, 223.

6

The shift to heightened real estate lending was successful for several years.  TierOne's nonperforming loans (*i.e.*, 90 or more days delinquent) in 2003, 2004, and 2005 were modest — $3.6 million, $10.3 million, and $ 14.4 million, respectively.  Index Ex. 8 (2005 10-K) at 15.  But starting in 2006, TierOne (and the nation) began to experience the most serious financial and real estate crisis since the Great Depression.  Like other banks across America, TierOne's business was substantially affected by this crisis because real estate values fell dramatically, and borrowers increasingly began to default on their loans.  *See* Doc. No. 57 (Compl.) ¶ 198; 225.

As the crisis worsened, defaults on TierOne's loans increased.  *See* Index Ex. 1 at 17 (2008 TierOne Form 10-K); Index Ex. 9 (summary of SEC disclosures); *see also* Doc. No. 57 (Compl.) ¶ 225.  TierOne disclosed each quarter the increasing amount of nonperforming loans and rising charge offs for defaulting loans.  TierOne's nonperforming loans in the first quarter of 2006 equaled $18.4 million, and, in each of its quarterly filings after that, TierOne disclosed that its nonperforming loans increased, reaching $207.6 million in the second quarter of 2009.  Index Ex. 9 (summary of SEC disclosures).  In each of its quarterly filings between 2006 and 2009, TierOne also disclosed that its loan delinquency rate increased, growing from 1.11% for the first quarter of 2006 to 9.44% in the first quarter of 2009.  *Id.*

TierOne also estimated, as required by Generally Accepted Accounting Principles ("GAAP"), its future loan losses, and TierOne established loan loss allowances each quarter.  TierOne maintained loan loss allowances that were calculated to account for "known and inherent losses in the loan portfolio that are both probable and reasonable to estimate" based on historical loan loss experience.  Index Ex. 10 (Excerpts from 2008 10-K (filed on March 11, 2009) at 42; 2007 10-K (filed on March 10, 2008) at 42; 2006 10-K (filed on March 7, 2007) at 36)).  As the crisis expanded, TierOne steadily raised its reserves for future loan losses, and

TierOne disclosed those loan loss reserves each quarter. TierOne's quarterly SEC filings disclosed that between the first quarter of 2006 and the end of 2008, its allowance for loan and lease losses grew from $31.8 million to over $60 million. Index Ex. 9 (summary of SEC disclosures). Those same quarterly filings also disclosed that TierOne increased its provisions for loan losses. *Id.*

Given that the prediction of future events is always difficult, TierOne stressed that its loan loss allowances were estimates and might be inadequate. TierOne repeatedly warned the market and investors of that fact:

> An inadequate allowance for loan losses could adversely affect our results of operations. We are exposed to the risk that our customers may be unable to repay their loans according to their terms and that any collateral securing the payment of their loans may not be sufficient to assure full repayment. . . . If our evaluation is incorrect, our allowance for loan losses may not be sufficient to cover losses inherent in the loan portfolio, resulting in additions to our allowance for loan losses. Increases in the allowance for loan losses result in an expense for the period. If, as a result of general economic conditions or a decrease in asset quality, management determines that additional increases in the allowance for loan losses are warranted, we may incur additional expenses. *We can make no assurances that our allowance for loan losses will be adequate to cover loan losses inherent in our portfolio.*

Index Ex. 10 (2008 10-K (filed on March 11, 2009) at 42; 2007 10-K (filed on March 10, 2008) at 42; 2006 10-K (filed on March 7, 2007) at 36) (emphasis added); *see also* Doc. No. 57 (Compl.) ¶ 203 n.6.

As the crisis continued and TierOne's loan losses continued to grow, TierOne attempted to weather the crisis in several ways. In early 2008, TierOne worked to close a transaction with a large real estate lending company, CapitalSource, Inc., that valued TierOne stock at $34.46 per share. Doc. No. 57 (Compl.) ¶¶ 206-213. The purchase agreement allowed either party to walk away from the acquisition if the Office of Thrift Supervision ("OTS") did not approve the deal by February 17, 2008. *Id.* ¶ 208. OTS did not provide approval by February 17, 2008, and the transaction did not occur. *Id.* ¶¶ 212-238. In September 2009, TierOne again attempted a

transaction to increase its capitalization by selling 32 branches to Great Western Bank.  *Id*. at

¶¶ 271-72.  That transaction was also subject to OTS's approval, and, on April 30, 2010, TierOne

announced that OTS had refused to approve the sale to Great Western Bank.  *Id*. at ¶ 293.

Throughout 2008 and 2009, TierOne also worked with OTS to strengthen its capital

position by, among other steps, agreeing to enhanced capital requirements.  *Id*. ¶¶ 250-51.  As

TierOne disclosed in its SEC filings, OTS continued to monitor TierOne's performance in 2008

and 2009 and scrutinize the company's finances.  TierOne also specifically disclosed OTS's

increasing demands on TierOne.  Among other disclosures, TierOne advised that in 2009 it

entered into a Supervisory Agreement with OTS that increased the capitalization requirements

TierOne had to meet to be "well capitalized."  Index Ex. 1 at 6.  TierOne disclosed that if it

continued to incur losses it would have difficulty meeting those enhanced requirements.  Index

Ex. 9.12 at 59.  TierOne further disclosed in 2010 that OTS ordered it to be recapitalized prior to

May 31, 2010, either by merger with another financial institution or by selling all or substantially

all of its assets.  Index Ex. 9.14 at 2; Doc. No. 57 (Compl.) ¶¶ 242, 250.  Although OTS

increased its scrutiny of TierOne and imposed increased operating restrictions on TierOne during

that period, OTS continued to allow TierOne to operate and attempt to improve its performance.

**The Performance of TierOne's Stock.**

During the crisis, TierOne's stock price declined over the course of several years, as the

chart below reflects.  The stock's price declined from $30/share in June 2007 to $20/share in

February 2008.  Index Ex. 11 (TierOne Bloomberg Report).  The sharpest decline occurred from

February 2008 to June 2008 when the price declined from $20 per share to $5 per share after the

prospective acquisition of TierOne by Capital Source fell through.  *Id.*[6]

**PRICE/VOLUME HISTORY**



*Daily values shown for 12/01/2006 through 06/30/2010.*

Thereafter, the crisis wore on and continued to devastate the nation and the banking

industry.  Despite TierOne's efforts to turn around its business, OTS ultimately concluded that

TierOne Bank had insufficient capital to cover its liabilities.  Doc. No. 57 (Compl.) ¶¶ 274, 285.

On June 4, 2010, OTS closed TierOne Bank.  *Id.* ¶¶ 32, 301.  On June 28, 2010, TierOne filed

for Chapter 7 bankruptcy.  *Id.* ¶¶ 29, 302.  Neither TierOne nor TierOne Bank is a defendant in

this action.

## <u>ARGUMENT</u>

Plaintiffs' entire Complaint should be dismissed with prejudice because it does not state

any viable claims under ERISA.  Although Plaintiffs attempt to assert multiple breaches of

fiduciary duty, Plaintiffs' claims boil down to a single theory:  that Defendants supposedly

breached their fiduciary duties by allowing Plaintiffs to continue to invest in TierOne stock,

---

6   Although Plaintiffs allege that the acquisition did not occur because of the weakness of
    TierOne, the stock price of CapitalSource also declined by virtually the same percentage as
    TierOne stock in the months after OTS declined to approve the acquisition.  Index Ex. 12
    (CS chart).

which Plaintiffs, in hindsight, assert was an imprudent investment because the company was progressing towards bankruptcy.

Plaintiffs' Complaint is fatally flawed for multiple reasons.  First, the Complaint erroneously presumes that Defendants had the power as the Plans' fiduciaries to remove TierOne stock as an investment option.  In reality, as the text of the Plans demonstrates, they did not.  The Plans required that TierOne stock be provided as an investment option.  The ability to modify that requirement belonged to the Plans' settlor, not the Plans' ERISA fiduciaries.  Put simply, Defendants cannot be liable for breach of fiduciary duty because, under the Plans' terms, they did not have any fiduciary discretion to allow or disallow TierOne stock as an investment option.  Each of Plaintiffs' claims is premised on Plaintiffs' confusion of the role of settlors and fiduciaries under ERISA and on Plaintiffs' misreading of the Plans and the duties and powers that Defendants possessed.  For that reason alone, the entire Complaint should be dismissed.

Second, the Complaint also is flawed because it ignores the law's protection for one of the specific statutory goals of ERISA, which is to promote employee ownership of company stock.  *See* 29 U.S.C. §§ 1104(a)(2), 1107.  As the Eighth Circuit has stressed, "Congress expressly intended that [ESOPs] would be both an employee retirement benefit plan and a 'technique of corporate finance' that would encourage employee ownership."  *Martin v. Feilen*, 965 F.2d 660, 664 (8th Cir. 1992).  In light of that goal, fiduciaries enjoy a rebuttable presumption that they acted in accordance with ERISA by allowing continued investment in company stock — the so-called *Moench* presumption, which at least four Circuit Courts have expressly adopted.  *See Moench v. Robertson*, 62 F.3d 553, 571 (3d Cir. 1995).  Accordingly, even if Defendants had the ability under the Plans' terms to remove TierOne stock as an option, which they did not, Plaintiffs must do more than merely assert, with the benefit of hindsight, that

11

Defendants should have done so.  Plaintiffs must come forward with specific factual allegations overcoming the presumption that continued investment in employer stock comports with fiduciary obligations under ERISA.

Third, Plaintiffs' ancillary claims — for failure to disclose information about TierOne's alleged "true" financial condition, for failure to monitor the actions of appointed fiduciaries, and for breach of the duty of loyalty — should be dismissed for the same reasons.  Those ancillary claims also fail for the independent reason that Plaintiffs have not presented factual allegations sufficient to survive a motion to dismiss under the standards in *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).  As the Supreme Court has held, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 570); *Precision Indus., Inc. v. Tyson Foods, Inc.*, No. 8:09CV195, 2009 WL 4377558, at *1 (D. Neb. Nov. 25, 2009) (Bataillon, J.) (granting motion to dismiss).  Although Courts resolve reasonable inferences in favor of a plaintiff, *Zoltek Corp. v. Structural Polymer Group*, 592 F.3d 893, 896 n.4 (8th Cir. 2010) (granting motion to dismiss), the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555; *accord Eckert v. Titan Tire Corp.*, 514 F.3d 801, 806 (8th Cir. 2008) (affirming dismissal of ERISA claims).

Here, Plaintiffs cannot state a plausible claim with conclusory statements, unsupported accusations, "labels and conclusions," and mere recitals of a claim's elements.  *Iqbal*, 129 S. Ct. at 1949-51;  *C.N. v. Willmar Pub. Schools, Indep. School Dist. No. 347*, 591 F.3d 624, 634 (8th Cir. 2010) (affirming dismissal); *Sharp Elecs. Corp. v. Metropolitan Life Ins. Co.*, 578 F.3d 505, 512 (7th Cir. 2009) (affirming dismissal of ERISA claim).  Because the "well-pleaded facts do

not permit the court to infer more than the mere possibility of misconduct," Plaintiffs' Complaint fails to state a claim for relief. *Iqbal*, 129 S. Ct. at 1950 (quoting Fed. R. Civ. P. 8(a)(2)); *see Precision Indus.*, 2009 WL 4377558, at *2.

**I.      Count I — Breach Of Fiduciary Duty To Prudently Manage The Plans And The Plans' Assets — Fails To State A Claim.**

In Count I, Plaintiffs primarily allege that Defendants breached their fiduciary duty to manage the Plans prudently because Defendants either knew or should have known that TierOne's stock "was not a suitable and appropriate investment" and "failed to take adequate steps to prevent the Plans . . . from suffering losses" on the investments.  Doc. No. 57 (Compl.) ¶ 350.  Plaintiffs' theory is that Defendants did not comply with their fiduciary duties under ERISA because Defendants continued to include TierOne stock an investment option when TierOne's business was declining in the financial and real estate crisis.[7]

This theory is based on a fundamental misunderstanding of the scope and nature of Defendants' ERISA duties.  Under ERISA, fiduciaries have a duty of prudence to act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims."  29 U.S.C. § 1104(a)(1)(B).  To state a claim for breach of fiduciary duty, a plaintiff must allege that (1) defendants were fiduciaries of the plan who, (2) acting within their capacities as plan fiduciaries, (3) engaged in conduct constituting a breach of an ERISA fiduciary duty.  *See Pegram v. Herdrich*, 530 U.S. 211, 222-23 (2000); *Wright v. Medtronic, Inc.*, No. 09-CV-0443, 2010 WL 1027808, at *4 (D. Minn. Mar. 17, 2010).

---

[7]   Plaintiffs also attempt to shoehorn into Count I a claim that Defendants breached their duty of loyalty as well.  Fiduciaries have a duty of loyalty to "discharge [their] duties with respect to a plan solely in the interests of the participants and beneficiaries and for the exclusive purpose of providing benefits" to participants.  29 U.S.C. § 1104(a)(1)(A)(i).  Defendants address Plaintiffs' duty of loyalty claims in Section III below.

13

**A.     Defendants Do Not Have Any Fiduciary Liability For Allowing Continued Investment In TierOne Stock Because Removing TierOne Stock Was A Settlor Function, Not A Fiduciary Function.**

Count I does not state a claim because Defendants did not have any fiduciary discretion, and thus lacked any fiduciary duty, under the Plans to remove TierOne stock as an investment option.  Under ERISA, a person may be liable for breach of fiduciary duty only "to the extent" that the person "exercises any discretionary authority or discretionary control" in administering or managing an ERISA plan.  29 U.S.C. § 1002(21)(A); *Pegram,* 530 U.S. at 225; *In re Wachovia Corp. ERISA Litig.*, No. 3:09cv262, 2010 WL 3081359, at *8 (W.D.N.C. Aug. 6, 2010).  Because any decision to prohibit continued investment in TierOne stock was a settlor decision that did not implicate ERISA's fiduciary duties, Plaintiffs cannot state a claim for breach of fiduciary duty.

Contrary to Plaintiffs' assertion, in their alleged role as the Plans' fiduciaries, Defendants simply did not have discretionary authority to remove TierOne stock as an investment option from the Savings Plan and ESOP.  Under the Plans' governing documents, the Plans were designed and established to *require* TierOne stock to be an investment option.  The Savings Plan expressly provided that the Savings Plan's fiduciaries did not have any discretion to remove the Stock Fund as an investment option.  Index Ex. 2 at § 4.01A (Plan).  The Savings Plan mandated that "[o]nce an investment in the Qualifying Employer Securities Fund [*i.e.* the Stock Fund] is made available to Participants, *it shall continue to be available* unless the Plan is amended to disallow such available investment."  *Id*. (emphasis added).  Accordingly, even assuming that Defendants were plan fiduciaries, in operating the Savings Plan, they could not choose to

14

discontinue offering the Stock Fund; the Stock Fund option could be removed only by amending the Savings Plan to disallow it.[8]

Similarly, the ESOP required that the ESOP's assets be "invested primarily in the capital stock of TierOne." Index Ex. 5 at 1. The ESOP's Investment Policy specifically instructed that the ESOP was "designed to invest primarily in [TierOne] stock." *Id*. at § 5.1 (ESOP). The ESOP stated that the Administrator could instruct the Trustee to invest Plan assets in other investments, but this language was only to facilitate other provisions of the ESOP that allowed participants to diversify their accounts under ESOP Section 4.6 in the future and under certain conditions. *See id*. at § 4.6. However, diversification was not permitted as an option to any participants until at least 2012 (*i.e.*, 10 years after the ESOP was initiated). *See* Index Ex. 5 at 27-28; *see also* Doc. No. 57 (Compl.) ¶ 160. Accordingly, the ESOP, like the Savings Plan, affirmatively required fiduciaries to offer TierOne stock as an investment option.

Recognizing that the fiduciary's ability to remove TierOne stock as an option is a crucial aspect of their claim, Plaintiffs erroneously assert that the Plans did not require that TierOne stock be an investment option. Doc. No. 57 (Compl.) ¶¶ 104, 113, 137-38, 156. Those incorrect allegations must be disregarded because they are contradicted by the express and unambiguous terms of the Plans. By making those incorrect assertions, however, Plaintiffs acknowledge that the Plans' terms control Defendants' alleged fiduciary duties under ERISA.

Courts repeatedly have held that if a plan's terms require employer stock to be an investment option, then plan managers neither have discretionary authority to remove employer stock as an investment option nor perform a fiduciary function in that regard. For example, in *Kirschbaum v. Reliant Energy, Inc.*, 526 F.3d 243, 253 (5th Cir. 2008), the Fifth Circuit held that

---

8    Indeed, as Plaintiffs allege, the Savings Plan was amended on June 2, 2010 to remove the Stock Fund as an investment option. Doc. No. 57 (Compl.) ¶ 300.

4:10-cv-03132-JFB -TDT   Doc # 71   Filed: 11/15/10   Page 24 of 55 - Page ID # 884

because the plan required investment in Reliant Energy ("REI") stock and gave no discretion to terminate the fund or halt investments in it, the REI defendants lacked any fiduciary duty under ERISA to remove the employer's stock as an option.  That ERISA case involved a steep drop in the value of the REI common stock after a disclosure that some of REI's employees had engaged in sham transactions.  *Id.* at 247.  The Fifth Circuit recognized: "Because the Plan's requirements to invest in REI stock [were] mandatory and were treated as such by REI and the Benefits Committee, we agree with the district court that no fiduciary duties are inherent in the Plan other than to follow its terms."  *Id.* at 253.  Numerous other courts have dismissed ERISA claims like Plaintiffs' where the plan required employer stock be offered.  *E.g.*, *In re American Express Co. ERISA Litig.*, 08 Civ. 10834, 2010 WL 4371434, at \*9 (S.D.N.Y. Nov. 2, 2010) ("fiduciary duty is 'not implicated' when it 'makes a decision regarding the form or structure of the Plan.' Therefore, American Express cannot be liable for establishing the Company Stock Fund or for failing to terminate it."); *Wachovia*, 2010 WL 3081359, at \*9 ("Because the Plans require the maintenance of the Wachovia Stock Fund as an available investment option, elimination of that Fund would have required a modification of the Plans. . . . Modification of an ERISA plan, however, is not a fiduciary function."); *In re Citigroup ERISA Litig.*, No. 07 Civ. 9790, 2009 WL 2762708, at \*7-8 (S.D.N.Y. Aug. 31, 2009) ("[D]efendants had no discretion whatsoever to eliminate Citigroup stock as an investment option, and defendants were not acting as fiduciaries to the extent that they maintained Citigroup stock as an investment option.").[9]

Those authorities are premised on ERISA's requirement that fiduciaries act "in accordance with the documents and instruments governing the plan insofar as such documents

---

[9]   *Citigroup* is currently on appeal in the Second Circuit.  The court in *American Express* recently rejected the plaintiff's argument that it should disregard *Citigroup* on that basis, however, holding instead that the *Citigroup* opinion is "on point and persuasive."  2010 WL 4371434, at \*10.

16

and instruments are consistent with the provisions of" ERISA.  29 U.S.C. § 1104(a)(1)(D).

Thus, a trustee who is bound to follow the trust's terms should not be placed in "the untenable

position" of being sued for adhering to the plan's terms.  *Kirschbaum*, 526 F.3d at 256; *see also*

*Harris v. Amgen, Inc.*, No. 07-CV-5442, 2010 WL 744123, at *12 (C.D. Cal. Mar. 2, 2010)

("Plaintiffs have not offered sufficient allegations that the continued offering of the Amgen

investment option was imprudent. If Defendants had eliminated the investment option, they

would have been subject to lawsuits if the price of Amgen stock later rose.").

Put another way, where the settlor of a plan mandates investment in employer securities,

the plan fiduciaries are "immune from judicial inquiry" regarding those investments because they

are implementing the intent of the settlor.  *Edgar v. Avaya, Inc.*, 503 F.3d 340, 346 (3d Cir.

2007) (affirming 12(b)(6) dismissal).  Accordingly, if a plan mandates that the employer stock be

offered, plan fiduciaries who adhere to that mandate and continue to allow investments in the

stock are *immune* from fiduciary liability under ERISA for that decision because no fiduciary

duties are implicated.  *See, e.g.*, *Kirschbaum*, 526 F.3d at 254-55; *Edgar*, 503 F.3d at 346-47;

*American Express*, 2010 WL 4371434, at *9; *Wachovia*, 2010 WL 3081359, at *8; *Citigroup*,

2009 WL 2762708, at *7-8.

Nor can defendants face fiduciary liability for failing to adopt, amend, or terminate an

ERISA plan.  As the Supreme Court has held, amending an ERISA plan is not a fiduciary

function because those who adopt, amend, or terminate an ERISA plan "do not act as fiduciaries,

but are analogous to the settlors of a trust."  *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 443

(1999) (reversing denial of Rule 12(b)(6) motion and holding that ERISA's fiduciary duties are

inapplicable to plan amendments); *Lockheed Corp. v. Spink*, 517 U.S. 882, 890 (1996) (same);

*Kalda v. Sioux Valley Phys. Partners*, 481 F.3d 639, 649 (8th Cir. 2007) (affirming dismissal of

17

ERISA claim: "an employer's decision to amend a pension plan concerns the composition or design of the plan itself and does not implicate the employer's fiduciary duties"); *Siskind* v. *Sperry Ret. Program, Unisys*, 47 F.3d 498, 505 (2d Cir. 1995) (reversing judgment for plaintiffs: exempting "plan design decisions from fiduciary review is a necessary part of ERISA's legislative balance" because subjecting plan sponsors to fiduciary liability for plan design would deter the creation of plans); *accord Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 78 (1995) (employers or other plan sponsors are generally free, for any reason at any time, to adopt, modify, or terminate a plan, and a company does not act in a fiduciary capacity when doing so); *American Express*, 2010 WL 4371434, at *9; *Wachovia*, 2010 WL 3081359, at *8; *Citigroup*, 2009 WL 2762708, at *7-8.

In *Wachovia*, for example, the plaintiffs sued defendants for imprudently allowing continued investments in employer stock when the employer's stock price fell 87% because of the employer's allegedly risky lending practices during the recent financial crisis.  2010 WL 3081359, at *6, 14 n.9.  The court granted the defendants' motion to dismiss because the plan, like the Plans here, provided that the employer "Stock Fund '*shall* be made available to Participants for investment.'"  *Wachovia*, 2010 WL 3081359, at *9.  Consequently, the plan terms required that the defendants offer the employer stock as an investment option, and thus they had no fiduciary liability for following the plan.  *Id.*; *see also American Express*, 2010 WL 4371434, at *9 (granting motion to dismiss because defendants were following plan terms that required stock fund be offered); *Citigroup*, 2009 WL 2762708, at *7-8 (granting motion to dismiss where plan stated stock "shall be permanently maintained").

The same rule applies where the plan's terms provide that the plan's assets "shall be invested primarily" in employer stock.  *Citigroup*, 2009 WL 2762708, at *9 (interpreting that

language to mean that employer stock must be provided); *see also Kirschbaum*, 526 F.3d at 250 (finding that plan required investment in company stock where assets were to be "*primarily invested and reinvested*" in company stock).[10]

 Not all district courts considering motions to dismiss ERISA claims based on stock drops have dismissed claims where the plan required employer stock as an investment option. *See, e.g., Gearren v. McGraw-Hill Cos.*, 690 F. Supp. 2d 254, 264 (S.D.N.Y. 2010) (collecting cases, but granting defendants' motion to dismiss); *In re Polaroid ERISA Litig.*, 362 F. Supp. 2d 461, 473 (S.D.N.Y. 2005). Those decisions are incorrect, however, because they disregard ERISA's distinction between the fiduciary and settler roles and ignore ERISA's text, objectives, and the trust-law principles on which it is based. Cases like *Gearren* and *Polaroid* rely on the general concept that plan terms cannot override ERISA's fiduciary duties. *Gearren*, 690 F. Supp. 2d at 264; *Polaroid*, 362 F. Supp. 2d at 473. Their conclusion is based on the faulty premise that defendants had fiduciary discretion to continue offering the employer stock. As demonstrated above, Defendants here did not have that discretion because employer stock could be disallowed as an investment option only by amending the Plans, which is not a fiduciary function and was beyond their authority or control. Put another way, the Plans' terms do not excuse or extinguish any fiduciary duty; instead, ERISA simply does not impose a fiduciary duty to modify the Plans in the first instance.

 More fundamentally, the conclusion in cases like *Gearren* and *Polaroid* that under

---

10  Although some courts have considered the phrase "invest primarily" in company stock to give the fiduciaries discretion to invest the stock fund in assets other than company stock, *see, e.g., In re Ferro Corp. ERISA Litig.*, 422 F. Supp. 2d 850, 859 (N.D. Ohio 2006); *In re Sprint Corp. ERISA Litig.*, 388 F. Supp. 2d 1207, 1220-21 (D. Kan. 2004), other courts hold that the phrase forbids fiduciaries from withdrawing the employer stock option entirely. Rather, the phrase merely authorizes the fund to hold a small reserve of liquid assets to facilitate timely distributions and stock transactions. *See Citigroup*, 2009 WL 2762708, at *8-9; *see also Wachovia*, 2010 WL 3081359, at *10.

certain circumstances fiduciaries "retain[] the ability and discretion to ignore the terms of the plan," *Gearren*, 690 F. Supp. 2d at 264; *Polaroid*, 362 F. Supp. 2d at 473, is wrong in this context because it is contrary to ERISA's text and the policies it seeks to promote.  To ensure uniformity and fairness in the administration of benefits, ERISA requires that every plan be established and maintained pursuant to a "written instrument."  29 U.S.C. § 1102(a)(1).  The Supreme Court frequently has emphasized that applying a plan's terms is "a straightforward rule of hewing to the directives of the plan documents that lets employers 'establish a uniform administrative scheme, [with] a set of standard procedures to guide processing of claims and disbursement of benefits.'" *Kennedy v. Plan Adm'r for DuPont Sav. & Inv. Plan*, 129 S. Ct. 865, 875 (2009) (quoting *Egelhoff v. Egelhoff*, 532 U.S. 141, 148 (2001) and *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 9 (1987)); *see also Curtiss-Wright Corp.,* 514 U.S. at 83 (ERISA "is built around reliance on the face of written plan documents").

The Supreme Court repeatedly has rejected attempts to "blur the bright-line requirement to follow plan documents in distributing benefits."  *Kennedy*, 129 S. Ct. at 876; *see also Boggs v. Boggs*, 520 U.S. 833, 850 (1997) (stating that ERISA is not amenable to "sweeping extratextual extension").  The holding in *Gearren* and *Polaroid* that fiduciaries may be liable – after the fact and in hindsight – for failing to ignore or violate the plan imposes a new fiduciary duty that ERISA does not contemplate.  Requiring fiduciaries to make *ad hoc* decisions to pick and choose which express plan terms they should abide by and which they should violate is contrary to the respect ERISA mandates for written instruments.  A court-created duty of this type would undermine ERISA's objective of uniform and predictable administration of benefits, and would place on fiduciaries responsibilities Congress never intended.  Accordingly, the holdings of *American Express*, *Citigroup* and *Wachovia*, among others, better comports with the objectives

and text of ERISA and should apply here.

Therefore, in this case, Defendants cannot possess fiduciary liability for maintaining TierOne stock as an investment option because the Plans expressly required that TierOne stock be offered as an investment option.  Because Defendants cannot be liable for breach of fiduciary duty for not ignoring or amending the Plans to eliminate TierOne stock as an investment option, Count I should be dismissed.

### B.      Under ERISA's Express Terms, Defendants Cannot Be Liable For Not Diversifying The Plans.

As demonstrated in Section I.A., Plaintiffs' claims in Count I should be dismissed because Defendants had no fiduciary duty or discretion to remove TierOne stock as an investment option.  Even assuming that the decision to offer employer stock implicated a fiduciary duty, the claim that Defendants improperly allowed the Plans to continue to be invested in TierOne stock fails for an additional and independent reason under ERISA's plain text.

ERISA imposes a duty on the fiduciaries of some plans to "diversify[] the investments of the plan so as to minimize the risk of large losses."  29 U.S.C. § 1104(a)(1)(C).  For employee individual account plans ("EIAPs"), which include 401(k) plans and ESOPs, however, ERISA expressly states that this duty to diversify and the duty of prudence (to the extent that it requires diversification) are not violated by the acquisition or holding of qualifying employer stock.  29 U.S.C. § 1104(a)(2).  Based on ERISA's express terms in § 1104(a)(2), numerous cases hold that plaintiffs cannot state a claim for breach of the duty of prudence by alleging that the defendants failed to diversify an EIAP by reducing its holdings of employer stock.  *See, e.g.*, *Lanfear v. Home Depot Inc*., --- F. Supp. 2d ----, No. 1:07-cv-197, 2010 WL 2427413, at *10-11 (N.D. Ga. June 7, 2010) (granting motion to dismiss); *In re Beazer Homes USA, Inc. ERISA Litig* ., No. 1:07-CV-0952, 2010 WL 1416150, at *6-7 (N.D. Ga. Apr. 2, 2010); *Pedraza v. Coca-Cola Co.*,

21

456 F. Supp. 2d 1262, 1270 (N.D. Ga. 2006).  For example, in *Lanfear*, the plaintiffs did not directly allege a failure to diversify, but the court determined the core of their claim was nevertheless that the defendants imprudently failed to take any meaningful steps to prevent losses as a result of the plan's investment in employer stock by eliminating the employer stock fund as an option.  2010 WL 2427413, at *10.  The court concluded that "in other words, [plaintiffs claimed] that Defendants should have diversified the Plan's investments," for which § 1104(a)(2) mandated dismissal.  *Id*.

Similarly, here, Plaintiffs attempt to cast Count I as a claim for breach of the duty of prudence.  However, regardless of the labels they use, the claim's substance is that Defendants failed to diversify the Plans' holdings away from employer stock.  As in *Lanfear* and other cases dismissing similar claims, Plaintiffs assert that Defendants ought to have diversified the Plans, but failed to so.  Because ERISA's plain text exempts fiduciaries from the duty to diversify holdings of employer stock and from any duty of prudence with respect to diversification, Plaintiffs' claims must be dismissed.

## C.     Even If Defendants Had Some Discretion With Respect To Offering Employer Stock As An Investment Option — Which They Did Not — Plaintiffs Fail To State A Plausible Imprudence Claim.

Even if Plaintiffs were correct, which they are not, that Defendants could remove TierOne stock as an investment option, Plaintiffs' allegations fail for an additional reason: Plaintiffs have not stated a plausible claim that Defendants acted imprudently by allowing participants to choose to continue investment in TierOne stock.  Plaintiffs' theory contradicts two principles of ERISA law.  *First*, where a plan allows investments in employer securities, a decision to allow participants to invest in employer stock is presumed to have been prudent. *Second*, to overcome the presumption, a plaintiff asserting a prudence claim must point to

wrongful conduct by the defendants, and cannot simply assert that, in hindsight, the permitted investments performed poorly.

> **1.     Under ERISA, Continued Investment In Employer Stock Is Presumed To Be Prudent.**

When a plan allows investment in the employer's stock, fiduciaries who select the plan's investment options are entitled to a presumption that they acted prudently by offering the company's stock.  That doctrine is called the *Moench* presumption because it was first articulated by the Third Circuit in *Moench v. Robertson.*  62 F.3d at 571 ("[A]n ESOP fiduciary who invests the assets in employer stock is entitled to a presumption that it acted consistently with ERISA by virtue of that decision."); *see, e.g.*, *Quan v. Computer Sci. Corp.*, --- F.3d ----, 2010 WL 3784702, at *1 (9th Cir. Sept. 30, 2010) ("We also join the United States Courts of Appeals for the Third, Fifth, and Sixth Circuits by adopting the rebuttable '*Moench* presumption' that fiduciaries acted consistently with ERISA in their decisions to invest plan assets in employer stock."); *Edgar*, 503 F.3d at 345-46 (holding that fiduciaries of ESOPs and EIAPs are "entitled to judicial deference when they decide to invest plan assets in the sponsoring company's stock"); *Wright*, 2010 WL 1027808, at *5 ("*Moench* applied a presumption of prudence to the decision of an ESOP fiduciary to invest plan assets in employer stock.").[11]

The presumption is based upon the fact that in the ERISA statute, Congress expressed a strong preference for plan investment in employer stock, and "employee ownership constituted a goal [of ERISA] in and of itself."  *Moench*, 62 F.3d at 568; *see Quan*, 2010 WL 3784702, at *4; *Kirschbaum*, 526 F.3d at 253; *Martin*, 965 F.2d at 664.  Deferring to Congress's policy choice, courts avoid "judicial and administrative action that would thwart that goal."  *Donovan v.*

---

[11]   The *Moench* presumption was originally applied to ESOPs, but courts now apply it to any EIAP that encourages investments in employer stock, such as 401(k) plans.  *Edgar*, 503 F.3d at 347.  Accordingly the *Moench* presumption applies not only to the TierOne ESOP, but also to the Savings Plan.

*Cunningham*, 716 F.2d 1455, 1466 (5th Cir. 1983).  Congress envisioned that ESOPs would
"give employees an ownership interest and thus a stake in the financial successes — and
failures — of the companies for which they work." *Citigroup*, 2009 WL 2762708, at *12.
Because ESOPs invest only in one asset — employer stock — they seek to foster investment "in
securities issued by [the plan's] sponsoring company," not to "guarantee retirement benefits."
*Moench*, 62 F.3d at 568 (citations omitted); *Citigroup*, 2009 WL 2762708, at *12.

Courts repeatedly have dismissed at the pleadings stage claims in which plaintiffs alleged
that defendants violated their fiduciary duties when plaintiffs' investments in company stock
dropped as a result of the recent financial and real estate crisis.  Those courts hold that the
*Moench* presumption applies absent a sharp, precipitous decline in the stock price accompanied
by red flags suggesting corporate malfeasance or that the fiduciary knew of an imminent
corporate collapse.  Moreover, to overcome the presumption, a plaintiff must show that the
fiduciaries abused their discretion. *American Express*, 2010 WL 4371434, at *11; *In re Lehman
Bros. Sec. & ERISA Litig.*, 683 F. Supp. 2d 294, 301 (S.D.N.Y. 2010); *Citigroup*, 2009 WL
2762708, at *1; *In re Huntington Bancshares Inc. ERISA Litig.*, 620 F. Supp. 2d 842, 853 (S.D.
Ohio 2009); *see also Wright*, 2010 WL 1027808, at *5 (granting Rule 12(b)(6) motion).  A mere
drop in stock price, even 80% or more, is not sufficient to overcome the presumption.  *E.g.*,
*Ward v. Avaya Inc*., No. 07-3246, 2008 WL 4888494, at *4 (3d Cir. Nov. 13, 2008); *American
Express*, 2010 WL 4371434, at *11-12; *Wachovia*, 2010 WL 3081359, at *13-14.[12]

For example, in *Citigroup*, the plaintiffs attempted to assert an ERISA prudence claim by
attacking the defendants' decision to retain Citigroup stock as a plan investment option.  The

---

[12]  Those and other courts have applied the *Moench* presumption in dismissing claims at the
      motion to dismiss stage.  *E.g.*, *Wright*, 2010 WL 1027808, at *5-6; *see also Edgar*, 503 F.3d
      at 349; *Harris*, 2010 WL 744123, at *9; *In re Harley-Davidson, Inc. Sec. Litig.*, 660 F. Supp.
      2d 953, 965 n.5 (E.D. Wis. 2009).

plaintiffs asserted that Citigroup did so even though Citigroup allegedly had "engaged in 'a pattern of risky loan practices' by 'marketing, purchasing, and originating subprime loans without adequate considerations of the borrower's ability to pay and with unreasonably high risk of borrower default.'"  2009 WL 2762708, at *18 (quoting complaint).  As a result, "Citigroup suffered losses totaling tens of billions of dollars when the bottom fell out of the subprime mortgage market."  *Id.*  In fact, Citigroup sustained such enormous losses that it staved off bankruptcy only with a massive bailout from the Federal government motivated by the fear that the bank was too big to fail.

The court, however, rejected that ERISA claim.  The court held that those alleged facts, if true, would constitute evidence that "Citigroup adopted imprudent and risky business strategies that resulted in substantial losses to the company," but would not serve as evidence of imprudent investment selection.  *Id.*  Because of the protection provided by the presumption, plaintiffs may not merely suggest conditions that could have caused a fiduciary to take a different action.  Rather, on a "motion to dismiss, a complaint must contain facts that, if true, would make it plausible that a fiduciary '*could not have believed reasonably*' that 'continued adherence' to the plan's mandates regarding employer stock was 'in keeping with the settlor's expectations of how a prudent trustee would operate.'"  *Id.* at *17 (quoting *Edgar*, 503 F.3d at 348 (quoting *Moench*, 62 F.3d at 571)) (emphasis added).  Furthermore, "[o]ne cannot say that whenever plan fiduciaries are aware of circumstances that may impair the value of company stock, they have a fiduciary duty to depart from ESOP or EIAP plan provisions.  Instead, [to survive a motion to dismiss] there ought to be persuasive and analytically rigorous facts demonstrating that reasonable fiduciaries would have considered themselves bound to divest."  *Id.* at *18 (quoting

*Kirschbaum*, 526 F.3d at 256).  Because the plaintiffs failed to allege such circumstances, dismissal was appropriate.

The *Huntington Bancshares* court reached the same result, rejecting claims based on a stock drop caused by the bursting of the real estate bubble in 2007.  620 F. Supp. 2d 842.  The court held that the plaintiffs failed to show plausible imprudence claims, *i.e.*, they failed to present factual allegations showing a precipitous decline in stock price accompanied by red flags suggesting corporate malfeasance or impending collapse.  *Id.* at 853.  In *Huntington Bancshares*, the plaintiffs sued for breach of fiduciary duty under ERISA, alleging that defendants should not have continued to offer the company's stock as an investment option in light of the company's $1.5 billion exposure in the subprime market.  *Id.* at 845.  The court dismissed the claim because the complaint "merely setout[] the 'formulaic recitation of the elements' of [a] breach of fiduciary duty" claim.  *Id.* at 851-52.  The *Huntington Bancshares* court concluded that the steep drop in share price did not create a plausible inference that there had been corporate wrongdoing or that collapse of the company was imminent, as required to overcome the presumption.  *Id.* at 851-52.  Although the company stock had "experienced a significant drop" in its price, the drop was similar to that of other companies in the industry.  *Id.*  The court recognized that stock drop cases had increased because of the financial crisis, but "ERISA was simply not intended to be a shield from the sometimes volatile financial markets."  *Id.* at 853.

### 2.    Plaintiffs' Allegations Fail To Overcome The *Moench* Presumption.

In this case, Plaintiffs' allegations are not sufficient to overcome the *Moench* presumption.  The Plans required investment in TierOne's stock, and Defendants are entitled to a presumption that continuing to offer TierOne stock as an investment option was prudent.  To overcome that presumption, Plaintiffs must allege both a precipitous decline in the company stock's price and indicia of corporate wrongdoing or reason to believe that the collapse of

TierOne was imminent.  Plaintiffs' conclusory allegations — which, at most, amount to an after-the-fact complaint that TierOne's business strategies turned out to be risky in the context of the unforeseen financial and real estate crisis — are not sufficient to overcome the presumption and to state a claim for imprudent investment decisions.

*First*, Plaintiffs suggest that because TierOne ended up in bankruptcy, its imminent collapse must have been apparent to any reasonable fiduciary.  That logic is fallacious, and TierOne's bankruptcy filing does not make a decision to continue to offer TierOne stock imprudent.  A prudence claim is not a test of the investment's performance.  *Bunch v. W.R. Grace & Co.*, 555 F.3d 1, 7 (1st Cir. 2009) (citing *Donovan*, 716 F.2d at 1467).  Rather, "the ultimate outcome of an investment is not proof of imprudence" because such a standard "would convert the [plan] into an account with a guaranteed return and would immunize plaintiffs from assuming any of the risk of loss associated with their investment."  *DeBruyne v. Equitable Life Assur. Soc. of U.S.*, 920 F.2d 457, 465 (7th Cir. 1990).  "'The fiduciary duty of care . . .  requires prudence, not prescience.'"  *Id.* (quotation omitted).

The fact that a company ultimately seeks bankruptcy protection is not dispositive of a breach of fiduciary duty claim.  *See, e.g.*, *DiFelice v. U.S. Airways, Inc.*, 497 F.3d 410, 424 (4th Cir. 2007) (upholding judgment in favor of defendant fiduciaries, even though U.S. Airways declared bankruptcy because "whether a fiduciary's actions are prudent cannot be measured in hindsight"); *Summers v. UAL Corp.*, No. 03 C 1537, 2005 WL 2648670, at *6 (N.D. Ill. Oct. 12, 2005) (finding plaintiffs could not say through hindsight that bankruptcy was inevitable because at the time "[t]here were sufficient indications that UAL could recover from its setbacks").  In *In re Lehman Brothers Securities And ERISA Litigation*, the court granted defendants' motion to dismiss plaintiffs' imprudence claims, even though "[o]ne of the pivotal events of the financial

27

crisis . . . was the spectacular failure of Lehman Brothers," which filed for bankruptcy in September 2008.  683 F. Supp. 2d at 296.  Although Lehman Brothers ended in bankruptcy, the court dismissed the claim because plaintiffs failed to overcome the *Moench* presumption.  *Id.* at 303.  Similarly, the court granted defendants' motion in *Citigroup*, where the company avoided bankruptcy only because of a massive government bailout.  2009 WL 2762708, at *1.

Indeed, other allegations in the Complaint contradict Plaintiffs' assertion that bankruptcy must have been a foregone conclusion for TierOne, given its allegedly flawed business strategy and the economic recession.  During much of the purported class period, TierOne experienced solid financial results.  Doc. No. 57 (Compl.) ¶¶ 12, 206, 207, 210.  The stock did not experience a substantial decline until it slid from $20 per share in February 2008, after the acquisition by CapitalSource failed simply because the OTS did not provide approval before February 17, 2008, to $5 in June 2008.  But that decline, standing alone, does not overcome the presumption, and Plaintiffs cannot plausibly maintain that when TierOne's stock experienced its sharpest decline in the first two quarters of 2008, it was no longer viable or on the verge of imminent collapse.

Instead, the factual allegations of the Complaint demonstrate the opposite: after the stock price fell in June 2008, TierOne continued to maintain positive value, and its stock traded for the next two years.  In addition, throughout 2008 and 2009, OTS closely monitored TierOne and its finances, yet it continued to allow TierOne to operate and to attempt to improve its capitalization.  That OTS took no action to close TierOne until June 2010 demonstrates that it was reasonable for the fiduciaries to continue to believe during the period that TierOne could avoid bankruptcy.  It is undisputed that TierOne eventually succumbed to the effects of the financial and real estate crisis and that OTS ordered the bank be taken over, but that did not occur until June 2010.  Simply put, when TierOne stock declined in early 2008 (and when the

28

greatest value was lost), TierOne did not face an imminent collapse.  TierOne did not experience

a sudden drop in value that threatened the company with a collapse so imminent that "'a

fiduciary could not have believed reasonably'" that "'continued adherence'" to the plan's

mandates regarding employer stock were unreasonable, *Edgar*, 503 F.3d at 348, or that

"reasonable fiduciaries would have considered themselves bound to divest." *Kirschbaum*, 526

F.3d at 256.  Therefore, Plaintiffs' allegations fail to overcome the presumption.

> *Second*, Plaintiffs cannot rely upon hindsight to second-guess Defendants' conduct.

Courts do not judge fiduciaries' actions in hindsight but instead consider the prudence of the

conduct at the time of the challenged decision.  *See DeBruyne v. Equitable Life Assur. Soc. of

U.S.*, 720 F. Supp. 1342, 1348 (N.D. Ill. 1989) (citation omitted); *see also Bunch*, 555 F.3d at 7.

ERISA does not "hold defendants liable for an inability to predict the stock market crash."

*DeBruyne*, 720 F. Supp. at 1349; *see also Johnson v. Radian Group, Inc.*, No. 08-2007, 2009

WL 2137241, at *13 (E.D. Pa. July 16, 2009).  "A fiduciary cannot be placed in the untenable

position of having to predict the future of the company stock's performance.  In such a case, he

could be sued for not selling if he adhered to the plan, but also sued for deviating from the plan if

the stock rebounded . . . .  Moreover, from a practical standpoint, compelling fiduciaries to sell

off a plan's holdings of company stock may bring about precisely the result plaintiffs seek to

avoid: a drop in the stock price." *Kirschbaum*, 526 F.3d at 256.  Here, Plaintiffs must do more

than assert that, because TierOne wound up in bankruptcy, Defendants must have known in

2007, 2008 or 2009 that TierOne was doomed and its stock was an imprudent investment.

Rather, they must allege a plausible basis to determine that no fiduciary *at the time* could have

reasonably believed that it was reasonable to allow Plaintiffs to continue to invest in TierOne

stock.  Plaintiffs have failed to meet their burden.

*Third*, as in *Huntington Bancshares*, 620 F. Supp. 2d at 852, TierOne's performance was consistent with its industry peers. For example, the decline of TierOne's stock price in early 2008 was almost identical to that of CapitalSource, the real estate lending company that was going to acquire TierOne. Index Ex. 12 (CS Chart). Because there can be no question that the stocks of other similar regional banks experienced lower returns due to the financial crisis, the price decline was not evidence of corporate wrongdoing unique to TierOne. Nor was it obviously imprudent to continue to offer TierOne as an investment option, just as in *Huntington Bancshares*. Although TierOne's stock price declined, so the stock market overall, and, more relevantly, the banking industry in particular.

Accordingly, even if Defendants had some discretion in allowing continued investment in TierOne stock, which they did not, they did not abuse that discretion, and Count I fails.

### D. Plaintiffs Also Fail To State A Claim In Count I Based On Defendants' Alleged Communications About TierOne.

Plaintiffs assert in Count I that Defendants breached their duties by "failing to provide complete and accurate information regarding the Company's true financial condition and the Company's concealment of the same and, generally, by conveying inaccurate information regarding the Company's future outlook." Doc. No. 57 (Compl.) ¶ 351; *see also id.* ¶ 316, 320. Plaintiffs also allege "upon information and belief" that Defendants "fostered a positive attitude toward the Company's stock . . . by not disclosing negative material information concerning investment in the Company's stock." *Id.* at ¶ 351.

Although echoing the types of allegations commonly asserted in lawsuits claiming violations of the federal securities laws, those allegations do not state a claim for violation of ERISA fiduciary duties. To establish a claim for breach of fiduciary duty based on a fiduciary's allegedly misleading disclosures, a plaintiff must be able to allege and prove that: (1) the

30

defendants were acting as ERISA fiduciaries when they made the challenged disclosures; (2) the disclosures contain material misrepresentations or fail to disclose material information that defendants were under a duty to disclose; and (3) plaintiffs relied on the disclosures to their detriment. *Huntington Bancshares*, 620 F. Supp. 2d at 854. Plaintiffs' Complaint fails because Plaintiffs do not allege a fiduciary duty that applied to Defendants and that Defendants supposedly breached. Equally fatal to their claim is that Plaintiffs do not base their allegations on statements that Defendants made while acting as fiduciaries. Finally, Plaintiffs do not identify material omissions or misrepresentations in any fiduciary disclosures.

### 1. Plaintiffs Fail To State A Claim Based On Alleged Statements In TierOne's SEC Filings Or Public Statements Because They Were Not Fiduciary Communications.

As an initial matter, Plaintiffs' allegations in Count I are insufficient because the statements upon which Plaintiffs base their claims are not actionable under ERISA. Plaintiffs base their claim on statements made by TierOne officers and employees solely in their capacity as corporative executives, or by TierOne in its corporate securities filings. In both cases, those statements were not made by an ERISA fiduciary acting in a fiduciary capacity. Doc. No. 57 (Compl.) ¶¶ 219-220, 248-49, 254-56, 268-69, 271-72, 279. Accordingly, Plaintiffs fail to allege a breach of duty.

A communication implicates ERISA's fiduciary duties only "to the extent" that it was made in a fiduciary capacity. *See Pegram*, 530 U.S. at 222-23; *Huntington Bancshares*, 620 F. Supp. 2d at 853-4. Individuals do not act as ERISA fiduciaries "simply because [they make] statements about [the company's] expected financial condition or because an ordinary business decision turn[ed] out to have an adverse impact on the plan." *Varity v. Howe*, 516 U.S. 489, 505 (1996) (internal quotation marks omitted). Rather, communications are fiduciary in nature only if they are "*intentionally* connected" to benefits. *Id.*; *Citigroup*, 2009 WL 2762708, at *24.

Statements made in SEC filings, annual reports, corporate press releases or in other communications to shareholders, regulators, investors and customers are not "intentionally connected" to plan benefits, and thus are not made in an ERISA fiduciary capacity.  *See, e.g.*, *Shirk v. Fifth Third Bancorp*, No. 05-cv-049, 2009 WL 692124, at *17 (S.D. Ohio Jan. 29, 2009).  As the court in *Citigroup* stressed, "emerging caselaw makes clear that those 'who prepare SEC filings do not become ERISA fiduciaries through those acts' and, 'consequently, do not violate ERISA if the filings contain misrepresentations.'"  2009 WL 2762708, at *23 (quotation omitted).

As numerous courts have held, incorporating by reference SEC filings into plan materials does not change the analysis.  *E.g.*, *Kirschbaum*, 526 F.3d at 257; *Wachovia*, 2010 WL 3081359, at *16; *Lingis v. Motorola, Inc.*, 649 F. Supp. 2d 861, 875-76 (N.D. Ill. 2009); *Citigroup*, 2009 WL 2762708, at *24; *In re Bausch & Lomb, Inc. ERISA Litig.*, No. 06-cv-6297, 2008 WL 5234281, at *7 (W.D.N.Y. Dec. 12, 2008).  In *Lingis*, for example, the court explained that "when Defendants incorporated the 10-Ks and 10-Qs into the Form S-8 that [the company] was required to file with the SEC on behalf of the Plan, [company] was 'discharging its corporate duties under the securities laws, and was not acting as an ERISA fiduciary.'"  649 F. Supp. 2d at 875 (quoting *Kirschbaum*, 526 F.3d at 257).  Similarly, in *Shirk*, the court held the "preparation of SEC filings is not an ERISA fiduciary act 'even if misleading and incorporated by reference in required ERISA disclosures.'"  2009 WL 692124, at *16 (quotation omitted).  Therefore, "courts have dismissed ERISA claims alleging breaches of fiduciary duty to disclose in the employer stock context where the challenged statements consisted of SEC filings and statements made to the market."  *Bausch & Lomb*, 2008 WL 5234281, at *7 (citations omitted); *see also Citigroup*, 2009 WL 2762708, at *24.

32

Here, Plaintiffs fail to identify allegedly misleading statements Defendants made about TierOne that were "intentionally connected" to future plan benefits. Indeed, their only attempt to connect the allegedly "misleading" SEC filings to the Plans is the assertion that those filings were incorporated by reference into the Plans' Summary Plan Descriptions, the Savings Plan Form S-8, and other "fiduciary communications." Doc. No. 57 (Compl.) ¶¶ 30, 64, 142, 162. That allegation is not sufficient as a matter of law. Because the statements at issue were not made in an ERISA fiduciary capacity, *e.g., Wachovia*, 2010 WL 3081359, at *16; *Citigroup*, 2009 WL 2762708, at *24, Plaintiffs' failure to disclose claim in Count I should be dismissed.

## 2.      Plaintiffs Fail To Allege Any Duty That Defendants Breached.

Plaintiffs' allegations in Count I also are insufficient because Plaintiffs fail to allege any duty that Defendants breached. Plaintiffs' basic contention is Defendants purportedly failed to supply them with required information about the Plan's investment options. *See* Doc. No. 57 (Compl.) ¶¶ 346, 351. Specifically, the "plan investment option" about which Plaintiffs complain is TierOne stock, and Plaintiffs allege that Defendants failed to provide "complete and accurate information" about "the true financial condition" of TierOne. *Id.* ¶ 351. Plaintiffs do not complain about disclosures relating to plan logistics, fees, available investment alternatives, or contribution requirements, but rather about investment advice relating to one plan investment option — TierOne stock. Contrary to Plaintiffs' allegations, however, Defendants did not have an obligation to disclose any and all facts about TierOne's business operations simply because those facts conceivably could have impacted the price of TierOne stock.

ERISA imposes a basic duty not to mislead plan participants. A "fiduciary may not affirmatively miscommunicate or mislead plan participants about material matters regarding their ERISA plan" when communicating about the plan. *Kalda*, 481 F.3d at 644. Courts repeatedly have recognized, however, that the ERISA duty does *not* impose affirmative obligations to

33

provide advice as to the soundness of particular investment options, including investments in employer stock.  For example, ERISA fiduciaries do not have any duty to provide participants with investment education, "to 'give investment advice' or 'to opine on' the stock's condition." *Citigroup*, 2009 WL 2762708, at \*20 (*quoting Edgar*, 503 F.3d at 350); *accord Johnson*, 2009 WL 2137241, at \*19 (same).  Fiduciaries also have "no duty to generally share additional information about any of the various investments -- including the [company] Stock Fund – offered by the Plan."  *Lingis*, 649 F. Supp. 2d at 876; *Citigroup*, 2009 WL 2762708 at \*21 (citing *Curtiss-Wright Corp.*, 514 U.S. at 83).  As one court noted in rejecting claims similar to Plaintiffs' claims, fiduciaries are not "required to inform all Plan participants and beneficiaries of every corporate event, especially contingent events, that might impact the value of the company's common stock."  *Sweeney v. Kroger Co.*, 773 F. Supp. 1266, 1269 (E.D. Mo. 1991) (citation omitted).

One of the reasons why ERISA requires disclosures relating to plan logistics, fees, and operations, but not as to facts bearing on the performance of company stock, is to avoid potential conflicts with federal securities laws.  For example, federal securities laws strictly regulate the disclosure of inside information about a publicly traded company.  Thus, "requiring disclosure of non-public information to plan beneficiaries when the information has not been provided to the market generally may run afoul of the insider trading laws. . . . The statutory text of ERISA itself counsels against a construction that would require fiduciaries to make otherwise impermissible disclosures."  *Lingis*, 649 F. Supp. 2d at 876.  Other laws regulating securities create detailed requirements for the time and manner of corporate disclosures and impose liability if those disclosures are materially misleading or fail to disclose material information.  Thus, courts applying ERISA must not add disclosure requirements beyond those ERISA specifically imposes

34

because "creat[ing] a new fiduciary duty . . . [would] run the risk of disturbing the carefully

delineated corporate disclosure laws." *Baker v. Kingsley*, 387 F.3d 649, 662 (7th Cir. 2004)

(affirming dismissal). There is no "general duty of disclosure beyond what is specifically

required under ERISA." *Shirk*, 2009 WL 692124, at *18 (citation omitted).[13]

Here, Defendants provided participants with repeated disclosures about the Plans, the

performance of TierOne stock compared to other investments, and the participants' investment

options, including disclosing the risks associated with investing in the non-diversified Stock

Fund. *E.g.*, Index Ex. 3 at 2-4, 8 (SPD). Those communications satisfy ERISA. For example, in

*Edgar*, 503 F.3d at 350, the court affirmed dismissal of an ERISA claim, holding that the

defendants' disclosures were sufficient because they informed participants that their investments

were tied to market performance, that each fund carried different risks and potential returns, that

participants were responsible for investigating the investment options, that participants should

have considered seeking the advice of a personal financial advisor, and that there are heightened

risks associated with investing in non-diversified funds. *See also Lingis*, 649 F. Supp. 2d at 876.

Plaintiffs seek to impose disclosure obligations that far exceed ERISA's statutory

requirements. By demanding that ERISA fiduciaries provide participants with ongoing updates

on the company's "true" condition, Plaintiffs contort ERISA to impose disclosure obligations

---

[13] Plaintiffs may cite *Braden v. Wal-Mart, Inc.*, 588 F.3d 585 (8th Cir. 2009), but that case does
not help them. In *Braden*, the Eighth Circuit stated that "in some circumstances" fiduciaries
may have a duty to disclose "any material information that could adversely affect a
participant's interests." *Id*. at 598. *Braden* did not involve claims related to employer stock,
however, but rather claims about the plan's terms. There the court considered whether a
defendant had a duty to disclose fees charged for plan investments and payments the plan
made to investment advisors so plaintiffs could understand their benefits. The case did not
concern whether there is a duty to disclose financial information about the employer that,
arguably, may have an impact on the value of its stock as Plaintiffs allege here. *Id*.

that the statute does not require.  Because Defendants did not have a duty to disclose the

information Plaintiffs allege in Count I, Plaintiffs' failure to disclose claim should be dismissed.

### 3.    Plaintiffs Fail To Identify Any Inaccurate Material Information In TierOne's Disclosures.

Plaintiffs chiefly complain that Defendants failed to disclose "complete and accurate"

information about TierOne's financial condition, but Plaintiffs also assert that information

TierOne provided about its financial condition was incorrect or "materially misleading."  Doc.

No. 57 (Compl.) ¶¶ 179(c); *see also id*. ¶¶ 11, 16, 351.  Plaintiffs' claim fails because disclosures

in TierOne's SEC filings and other statements demonstrate that TierOne informed the public

(and thus the Plans' participants) about its lending practices and the risks it faced related to those

loans.  Despite the Complaint's conclusory allegations, Plaintiffs fail to identify any material

information about the Plans that Defendants failed to disclose or that was inaccurate.

Under ERISA, disclosures that "advise[] investors of the market risks presented by the

company's [business]" are sufficient even if they may not disclose *all* information about the

company.  *Johnson*, 2009 WL 2137241, at *18.  For example, in *Huntington Bancshares*, the

plaintiffs alleged that the defendants did not provide complete and accurate information about

the company's financial condition and that they conveyed incomplete information regarding the

prudence of investing in company stock.  620 F. Supp. 2d at 854.  The company's SEC filings

during the class period disclosed its potential exposure to credit and market risks because of its

involvement in subprime lending and that the company was not immune to the effects of market

turmoil.  *Id.* at 854-55.  After reviewing the company's disclosures, the court dismissed

plaintiffs' claims under Rule 12(b)(6) because "[p]laintiffs cannot satisfy their pleading burden

by ignoring the content of the disclosures and conclusorily asserting that they were incomplete."

36

*Id.* at 856.  The court also required the plaintiffs "to identify the additional information they claim was required to be disclosed and provide a basis for that assertion."  *Id.*

As in *Huntington Bancshares*, Plaintiffs' argument here ignores TierOne's disclosures. TierOne expressly and repeatedly disclosed in SEC filings throughout the Class Period the changes in its lending activity and the risks associated with its loans.  *See* pp. 7-9.  Each quarter beginning in 2006, TierOne's SEC filings clearly disclosed increases in the level of nonperforming loans, increases in its delinquency rates, and increases in its provisions for loan losses.  *Id.; see also* Doc. No. 57 (Compl.) ¶¶ 225, 235.  It also repeatedly disclosed OTS's increased scrutiny and the restrictions that OTS was imposing on the company.  *See* pp. 8-9; *see also* Doc. No. 57 (Compl.) ¶¶ 242, 250.  In addition to clearly, regularly and consistently disclosing its eroding finances and the risks the company faced, TierOne expressly advised investors that one of the material risks it faced was that its loan loss allowances could be inadequate.  TierOne repeatedly told the market that it could "make no assurances that [its] allowance for loan losses will be adequate to cover loan losses inherent in [its] portfolio."  Index Ex. 10 (Excerpts from 2008 10-K (filed on March 11, 2009) at 42; 2007 10-K (filed on March 10, 2008) at 42; 2006 10-K (filed on March 7, 2007) at 36).[14]

---

[14]  Moreover, Plaintiffs assert that Defendants are liable because of harm that occurred when information about the company's "true" condition was revealed starting in 2009.  Doc. No. 57 (Compl.) ¶¶ 11, 12, 274-87.  Plaintiffs allege they suffered losses when the market allegedly learned that OTS considered TierOne's earlier loan loss reserves to have been inadequate and TierOne announced that it would be required to restate its earnings.  As Plaintiffs' own Complaint and the documents it cites make clear, however, TierOne's stock had substantially declined long before those "revelations."  *Id.* ¶ 12; Index Ex. 11 (TO Bloomberg Report).  Plaintiffs' theory that purportedly undisclosed or misleading information about TierOne's loans and the risks it faced artificially inflated TierOne's stock price is belied by the fact that TierOne's stock price fell throughout the purported Class Period, even when it was allegedly artificially inflated.  Indeed, the vast majority of the stock price decline in the Class Period occurred months *before* June 2008, and long before the time when Plaintiffs claim "the truth" came out.  Events after June 2008 (which are the bulk of

37

Therefore, even if Defendants had disclosure duties as Plaintiffs assert in Count I (which Defendants do not), Plaintiffs fail to identify concealed or misleading material information that caused any harm to Plaintiffs or the Plans.  Accordingly, Count I fails to state a claim for relief.

## II.    Count II – Breach Of Fiduciary Duty To Monitor The Plans – Fails To State A Claim.

In Count II, Plaintiffs allege that the Director Defendants and Committee Defendants (as defined in the Complaint and collectively the "Monitoring Defendants") breached the duty to monitor by failing to ensure that fiduciaries they appointed had access to information about TierOne's business problems and by failing to ensure that the appointed fiduciaries "appreciated the huge and unjustified risk" of significant investment in TierOne stock.  Doc. No. 57 (Compl.) ¶ 372.  Plaintiffs also allege that the Monitoring Defendants breached their duties by allegedly concealing "accurate information about TierOne that the Monitoring Defendants knew or should have known that the fiduciaries needed in order to make sufficiently informed decisions," *id*. at ¶ 373, and by allegedly participating in "the Company's inappropriate business practices, and their consequences, including the artificial inflation of the value of TierOne stock," *id*. ¶ 381. This claim fails for two independent reasons.

### A.    The Duty To Monitor Claim Fails Because There Is No Viable Underlying Breach Of Fiduciary Duty Claim.

First, a duty to monitor claim is a derivative claim that requires an underlying breach by the appointed fiduciaries.  *See, e.g.*, *Pugh v. Tribune Co.*, 521 F.3d 686, 701 (7th Cir. 2008) (dismissing duty to monitor claim once duty of prudence claim was dismissed); *Wright*, 2010 WL 1027808, at *11; *Harley-Davidson*, 660 F. Supp. 2d at 968; *Huntington Bancshares*, 620 F. Supp. 2d at 856 (same); *Citigroup*, 2009 WL 2762708, at *26 (same).  Because Plaintiffs have

---

Plaintiffs' allegations) could not plausibly have been material to the majority of the declines in TierOne stock.  The alleged misstatements about which Plaintiffs complain could have little plausible effect on TierOne's stock price.

not presented a valid claim that Defendants breached any duties in Count I, the duty to monitor

claim in Count II fails as well.

> **B.** **Plaintiffs' Conclusory Allegations That The Monitoring Defendants Breached Their Duties Are Insufficient To State A Claim Under ERISA.**

Second, Plaintiffs' duty to monitor claim should be dismissed for the additional reason

that their allegations are insufficient under *Twombly/Iqbal*. Under ERISA, the duty to monitor

appointed fiduciaries is limited. Fiduciaries who appoint other fiduciaries should monitor the

performance of their appointees as "a natural extension of the duty to appoint and remove plan

fiduciaries." *See Lingis*, 649 F. Supp. 2d at 882. Under Department of Labor regulations, those

who monitor others are expected simply to review the fiduciaries' performance "at reasonable

intervals" and "in such manner as may be reasonably expected to ensure that their performance

has been in compliance with the terms of the plan and statutory standards, and satisfies the needs

of the plan." 29 C.F.R. § 2509.75-8 at FR-17. They are not obligated to examine and "monitor

the prudence of the individual investments offered under the Plan" or of each action the

appointed fiduciaries take. *Lingis*, 649 F. Supp. 2d at 882. To state a claim, a plaintiff must

allege facts to support a plausible claim that a defendant did not periodically review the

performance of the appointed fiduciaries. *See In re Calpine Corp. ERISA Litig.*, No. C-03-1685,

2005 WL 1431506, at *6 (N.D. Cal. Mar. 31, 2005); *see also Shirk*, 2009 WL 692124, at *19.

Here, the Complaint does not provide any allegations, much less allegations sufficient

under *Twombly/Iqbal*, as to whether or how the Monitoring Defendants failed to review the

performance of the Committee appointees at reasonable intervals. *Twombly*, 550 U.S. at 555

(stating "formulaic recitation of the elements of a cause of action will not do"). Plaintiffs

vaguely allege that the Monitoring Defendants failed to ensure that the monitored fiduciaries had

access to knowledge about TierOne's business problems and failed to ensure that the fiduciaries

39

appreciated the risk.  Doc. No. 57 (Compl.) ¶ 372.  However, Plaintiffs do not set forth allegations as to what actions were not taken or how the Monitoring Defendants failed to monitor the appointed fiduciaries.

Plaintiffs also allege that the Monitoring Defendants failed to ensure that the monitored fiduciaries had access to information essential to enable them to perform their duties.  That allegation suffers from two fundamental flaws.

For one thing, ERISA does not impose a duty to provide non-public information as part of the duty to monitor.  *See Calpine*, 2005 WL 1431506 at \*6-7; *Herrington v. Household Int'l, Inc.*, No. 02C8257, 2004 WL 719355, \*8-9 (N.D. Ill. March 31, 2004).  Such a requirement is "burdensome" and "too broad as it would require defendants to continuously gather and disclose nonpublic information."  *Herrington*, 2004 WL 719355, at \*8 (dismissing claim).

For another, even if monitoring fiduciaries are presumed to have such a duty, Plaintiffs' allegations regarding information that was not disclosed are conclusory.  Plaintiffs simply allege that the Monitoring Defendants failed to ensure that the fiduciaries had "access to knowledge about the Company's business problems" and concealed "accurate information about TierOne that the Monitoring Defendants knew or should have known that the fiduciaries needed in order to make sufficiently informed decisions."  Doc. No. 57 (Compl.) ¶¶ 372-73.  Plaintiffs do not make any effort to identify what information the Monitoring Defendants had, how they acquired that information, or what information they allegedly withheld from the appointed fiduciaries.

In addition, the Complaint does not even identify the appointed fiduciaries, and thus makes no allegations as to how those fiduciaries — presumably Tier One employees — would not already be in possession of superior information about Tier One's business than the outside directors and others who make up the Monitoring Defendants.  Indeed, the Complaint is devoid

40

of any plausible allegations that the Monitoring Defendants had information that was necessary for informed decision-making about TierOne stock that was not also in the possession of the appointed fiduciaries.  Accordingly, Plaintiffs' claim in Count II should be dismissed.

### III.   Count III – Breach Of Duty To Avoid Conflicts – Fails Because Plaintiffs Cannot Establish That Defendants Breached Their Duties Under ERISA.

In Count III, Plaintiffs allege that all Defendants breached the "duty to avoid conflicts of interest" because they allegedly placed their own interests over those of the participants, and some Defendants supposedly stood to gain by concealing TierOne's "true" financial state.  Doc. No. 57 (Compl.) ¶¶ 321-40, 392.  Plaintiffs identify three alleged conflicts of interest: (1) some Defendants' compensation was tied to the performance of the stock (*id*. ¶¶ 322-24); (2) some Defendants sold TierOne stock during the Class Period (*id*. ¶¶ 325-33); and (3) some Defendants stood to receive benefits once CapitalSource's acquisition of TierOne was complete (*id*. ¶ 334-40).  None of those allegations in Count III states a cause for relief.[15]

*First*, Count III is premised on a duty that ERISA does not recognize.  Courts have rejected the idea that there is a duty to avoid conflicts of interest under ERISA.  The Supreme Court specifically has recognized that because ERISA authorizes fiduciaries to wear "two hats," fiduciaries may "have financial interests adverse to beneficiaries" and may take business "actions to the disadvantage of employee beneficiaries, when they act as" employers or plan sponsors.  *Pegram*, 530 U.S. at 225.  The Eighth Circuit likewise has recognized that defendants may act in their own interests when not administering a plan or its assets.  *Hickman v. Tosco Corp.*, 840

---

[15]  In this section, Defendants address all of Plaintiffs' allegations that Defendants breached their duty of loyalty by failing to act "solely in the interest of the participants and beneficiaries" of the Plans.  *See* 29 U.S.C. § 1104(a)(1)(A).  Besides Count III, in Count I, Plaintiffs vaguely assert that Defendants breached their duty of loyalty by failing to provide plaintiffs with information about TierOne and by allowing continued investment in TierOne stock.  Doc. No. 57 (Compl.) ¶ 351.  Plaintiffs have not pled any facts to support that conclusion, which simply recites ERISA's fiduciary duties.  Therefore, it is not sufficient to assert a plausible claim for breach of the duty of loyalty.

F.2d 564, 566 (8th Cir. 1998) (affirming 12(b)(6) dismissal). Regarding claims based on the so-called duty to avoid conflicts, the "cognizable [ERISA] claim with respect to any alleged conflict of interest is not that the fiduciary is subject to a conflict of interest, but rather that in discharging his or her duties under a Plan, the fiduciary breached his or her duty of loyalty. . . . [T]he duty of loyalty is not a duty to avoid conflicts, but rather a rule of fiduciary conduct, applicable at all times, that is most important when fiduciaries are subject to a conflict." *In re Xerox Corp. ERISA Litig.*, 483 F. Supp. 2d 206, 218-19 (D. Conn. 2007). Because Count III purports to impose a fiduciary duty ERISA does not recognize, it should be dismissed.

*Second*, regardless of whether Plaintiffs characterize their claims a breach of the "duty to avoid conflicts of interest" or a breach of the duty of loyalty, Plaintiffs' allegations are not sufficient to support such a claim: "[T]he mere fact that a fiduciary has an adverse interest, or that a fiduciary's action incidentally benefits an employer, does not show that a fiduciary has breached the duty of loyalty." *Johnson*, 2009 WL 2137241, at *22 (citing *Trenton v. Scott Paper Co.*, 832 F.2d 806, 809 (3d Cir. 1987) and *DiFelice*, 497 F.3d at 421). Rather, courts dismiss loyalty claims based on alleged conflicts of interest if plaintiffs "fail[] to point to any specific conflict or harm or any benefit realized by Defendants as a result of the conflict." *Mellot v. Choice Point, Inc.*, 561 F. Supp. 2d 1305, 1319 (N.D. Ga. 2007) (granting motion to dismiss), *vacated pursuant to settlement* (Order, No. 05-1340 (N.D. Ga. May 26, 2008); *see also Johnson*, 2009 WL 2137241, at *22 (granting motion to dismiss); *Shirk*, 2009 WL 692124, at *20 (same).

Plaintiffs also must show that because of the alleged conflict, the defendant "took an action to affect plan participants adversely while performing a fiduciary function." *Shirk*, 2009 WL 692124, at *20. Negligent conduct is insufficient to demonstrate "that any defendant acted with a purpose other than the interest of Plan participants and beneficiaries." *Johnson*, 2009 WL

42

2137241, at *22.  For example in *Mellot*, the court rejected plaintiff's conclusory allegation that defendants were conflicted simply because defendants' compensation was tied to stock performance.  561 F. Supp. 2d at 1319.  Similarly, a fiduciary's sales of company stock are not a conflict of interest unless the plaintiffs plausibly allege "how sales of [the company's] stock created any conflict." *Citigroup*, 2009 WL 2762708, at *27 (dismissing claim).

Here, Plaintiffs do not allege either an actionable conflict or a benefit that Defendants realized from the purported conflicts at the expense of the Plans' participants.  They merely speculate as to how the alleged conflicts could have affected Defendants' conduct.  As in other cases, Plaintiffs' allegations that Defendants were conflicted because some of their compensation was tied to the performance of TierOne stock or because they sold some of their own TierOne stock are insufficient as a matter of law.

Plaintiffs' only remaining alleged conflict is that certain of the Defendants stood to benefit if CapitalSource's acquisition of TierOne occurred.  Doc. No. 57 (Compl.) ¶¶ 334-40.  That allegation is not sufficient because even if some Defendants stood to receive bonuses upon the closure of the deal, Plaintiffs' general and conclusory allegations fail to state a plausible factual basis as to how any of the Defendants took any actions that damaged the Plans' participants based on that alleged conflict and what those actions allegedly were.  Moreover, even assuming that some actions were taken to promote the success of the CapitalSource acquisition (which would have been to the benefit of TierOne and the Plans' participants as well), that transaction and the alleged bonuses never materialized because the process terminated in March 2008 after OTS failed to timely approve the deal.  That alleged conflict could not have affected Defendants' conduct in the two years that followed.

Accordingly, Plaintiffs fail to state a claim for any breaches of the duty of loyalty, whether under Count I or Count III.

## IV.     Plaintiffs Fail To State A Claim For Co-Fiduciary Liability.

In each count, Plaintiffs add a co-fiduciary liability claim, asserting under 29 U.S.C. § 1105(a) that each Co-Fiduciary Defendant "knew of the breaches by the other fiduciaries and made no efforts, much less reasonable ones, to remedy those breaches."  Doc. No. 57 (Compl.) ¶¶ 357, 380, 398; *see also id.* ¶¶ 354-64, 377-87, 395-405.  Plaintiffs' co-fiduciary liability claims also fail.

*First*, a co-fiduciary liability claim can survive only if there is an underlying breach by a fiduciary.  *See*, *e.g.*, *Citigroup*, 2009 WL 2762708, at *27.  Plaintiffs' failure to assert sufficient factual allegations under Counts I, II, and III defeats Plaintiffs' assertions of co-fiduciary liability with respect to each count.

*Second*, the co-fiduciary claims fail for the independent reason that Plaintiffs' conclusory and general allegations are not sufficient to state a claim under *Twombly*/*Iqbal*.  Plaintiffs cannot simply parrot 29 U.S.C. § 1105(a) and make general allegations against Defendants as a group without stating a factual basis that notifies each Defendant of the basis for the co-fiduciary liability claim.  *See*, *e.g.*, *In re Sears, Roebuck & Co. ERISA Litig.*, No. 02C8324, 2004 WL 407007, at *8 (N.D. Ill. Mar. 3, 2004) (dismissing co-fiduciary claim).  Rather, Plaintiffs must identify the fiduciary breaches, allege which Defendants knew of the breaches and how they obtained that knowledge, identify what acts each Defendant failed to take to remedy the breach, and identify how each Defendant concealed allegedly material information.  *In re McKesson HBOC, Inc. ERISA Litig.*, No. 00-20030, 2002 WL 31431588, at *17 (N.D. Cal. Sept. 30, 2002).

Here, Plaintiffs simply recite the elements of a co-fiduciary liability claim, asserting generally that Defendants knowingly participated in each other's alleged fiduciary breaches;

44

enabled the alleged breaches by other Defendants; and failed to remedy alleged breaches about which they had knowledge.  The Complaint is devoid of well-pleaded allegations to support the assertions. Therefore, Plaintiffs cannot sustain any claims for co-fiduciary liability.

## CONCLUSION

For the foregoing reasons, the entire Complaint should be dismissed with prejudice.

Respectfully Submitted,

DEFENDANTS SAMUEL P. BAIRD, CHARLES W. HOSKINS, JAMES E. McCLURG, CAMPBELL R. McCONNELL, JAMES W. STRAND, GALE R. FURNAS, ROGER LUDEMANN, GILBERT G. LUNDSTROM, PAULA LUTHER, LARRY PFEIL, EUGENE B. WITKOWICZ, PATRICIA YOUNG, JAMES A. LAPHEN, JOYCE PERSON POCRAS, AND ANN LINDLEY SPENCE

Dated:  November 15, 2010

By:    /s/ J. Kevin McCall                           By:   /s/ Gregory C. Scaglione (by permission)

J. Kevin McCall (IL Bar #3125685)          Gregory C. Scaglione
James L. Thompson (IL Bar #6199621)     David A. Yudelson
Douglas A. Sondgeroth (IL Bar #6278486) Koley, Jessen P.C., L.L.O.
JENNER & BLOCK LLP                          1125 South 103rd Street
353 N. Clark St.                                    Suite 800, One Pacific Place
Chicago, Illinois  60611                         Omaha, NE 68124
TEL: (312) 222-9350                             (402) 390-9500
FAX: (312) 527-0484 (fax)                     (402) 390-9005 (fax)

*Attorneys for Defendants Samuel P. Baird,*    *Attorneys for Defendants Gale R. Furnas, Roger*
*Charles W. Hoskins, James E. McClurg,*         *Ludemann, Gilbert G. Lundstrom, Paula Luther,*
*Campbell R. McConnell, and James W. Strand*   *Larry Pfeil, Eugene B. Witkowicz, and Patricia*
                                                              *Young*

By:   /s/ Thomas J. Kenny (by permission)     By:   Timothy J. Rivelli (by permission)

45

Thomas J. Kenny                          Timothy J. Rivelli (admitted *pro hac vice*)
Edward G. Warin                          William C. O'Neil (admitted *pro hac vice*)
Kathryn E. Jones                         Winston Strawn LLP
Kutak Rock LLP                           35 West Wacker Drive
1650 Farnam Street                       Chicago, IL 60601
Omaha, NE 68102-2186                     (312) 558-5308
(402) 346-6000                           (312) 558-7000 (fax)
(402) 346-1148 (fax)

*Attorneys for Defendant James A. Laphen*     *Attorneys for Defendant Joyce Person Pocras*


By:   /s/ Robert H. Berkshire (by permission)

Robert H. Berkshire #10296
Angela M. Boyer #24007
Berkshire & Burmeister
1301 South 75th Street
Suite 100
Omaha, NE 68124
(402) 827-7000
(402) 827-7001 (fax)

*Attorneys for Defendant Ann Lindley Spence*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 15, 2010, I caused a true and correct copy of the foregoing **Memorandum of Law in Support of Defendants' Omnibus Motion to Dismiss All Claims** to be served on counsel of record via electronic filing through the Court's ECF system.

/s/ J. Kevin McCall
J. Kevin McCall
